Anne M. BLEAKLEY, Plaintiff,

v.

JEKYLL ISLAND—STATE PARK AUTHORITY, Robert S. Case, and Charles S. Skypek, Defendants.

Civ. A. No. CV 281–20.

United States District Court,
S. D. Georgia,
Brunswick Division.

March 12, 1982.

Alvin Leaphart, Alan Smith, Brunswick, Ga., for plaintiff.

Gary R. Hurst, Asst. Atty. Gen., Atlanta, Ga., for defendants.

## ORDER

ALAIMO, Chief Judge.

This suit charges a state instrumentality and certain of its employees with violations of federal age discrimination laws. The plaintiff alleges that she was dismissed from her job with the Jekyll Island—State Park Authority solely due to her age and without regard to the quality of her performance. The plaintiff seeks redress under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the Fourteenth Amendment to the United States Constitution. The case is presently before the Court on the motion of all defendants to dismiss, Fed.R.Civ.P. 12(b)(6), and the motion of defendant Rob-

ert S. Case for summary judgment. Fed.R. Civ.P. 56(b).

The motion to dismiss raises interesting questions of constitutional law: first, whether the 1974 amendments to the ADEA, making that Act applicable to state governments, are constitutional, and second, whether a dismissed state employee can bring an equal protection claim charging age discrimination without alleging a pattern of dismissals arbitrarily based on age?

In addition to these questions the defendants raise subsidiary questions about the type of relief afforded by the ADEA.[1] Specifically, they challenge the legality of the plaintiff's claim for compensatory and punitive damages, for attorney's fees for services performed at the state administrative level, and for the value of future pension benefits that did not vest at the time of her firing.[2] For the reasons discussed below, the Court DENIES the motion to dismiss in all its aspects, except that it limits the plaintiff's right to recover compensatory and punitive damages to her equal protection claim against the individual defendants. Furthermore, the Court GRANTS the defendant Case's motion for summary judgment and orders the suit dismissed as to that defendant.

DISCUSSION

I. The Constitutionality of the 1974 ADEA Amendments.

■ The Age Discrimination in Employment Act (ADEA) was passed in 1967 in order to promote the "employment of older persons based on their ability rather than age" and to prohibit "arbitrary age discrimination . . . ." 29 U.S.C. § 621(b). Originally applicable only to private employers, coverage of the Act was extended in 1974 to include state and local governments. 29 U.S.C. § 630(b). *See Fair Labor Standards Amendments of 1974*, Pub.L.No. 93–259, § 28, 88 Stat. 55 (1974). The defendants contend that the ADEA claim in the instant case must be dismissed because the 1974 amendments are unconstitutional under the holding of *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976).

In *National League of Cities* the Supreme Court struck down amendments to the Fair Labor Standards Act (FLSA) that extended the FLSA's minimum wage and maximum hour provisions to almost all state and municipal employees. The amendments at issue were passed pursuant to Congress' power under the commerce clause, and the Supreme Court found that the Tenth Amendment limited that power when its exercise would "directly displace the States' freedom to structure integral operations in areas of traditional governmental functions . . . ." *Id* at 852, 96 S.Ct. at 2474.

But courts interpreting *National League of Cities* subsequently held that the Tenth Amendment limitation only speaks to Congressional action under the commerce clause, and does not limit Congressional action against states *qua* states taken pursuant to other constitutional powers. *See, e.g., Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978) (Burger, C. J., concurring); *Peel v. Florida Dep't of Transp.*, 600 F.2d 1070 (5th Cir. 1979); *Marshall v. Owensboro-Daviess County Hospital*, 581 F.2d 116 (6th Cir. 1978). In previous challenges to the constitutionality of the ADEA amendments at issue *sub judice*, most courts ruled that the amendments were enacted pursuant to section five of the Fourteenth Amendment,

---

1. The Court reads the plaintiff's complaint as bringing the ADEA claim against the State Park Authority and the individual defendants in their official capacities. The Court reads the constitutional claim as against only the individual defendants. *See E. E. O. C. v. Wyoming*, 514 F.Supp. 595, 596 (D.Wyo.1981), *prob. juris. noted,* —— U.S. ——, 102 S.Ct. 996, 71 L.Ed.2d 291 (1982).

2. These questions regarding the type of relief afforded by the ADEA were raised prior to the defendants' motion to dismiss the ADEA claim. A disposition favorable to the movants on this issue would, of course, render these subsidiary questions moot. But in light of the Court's decision to allow the ADEA claim, these subsidiary issues remain important to the disposition of this case and will be considered in this Order.

and thus the Tenth Amendment limitation on Congressional action was inapplicable. *See, e.g., Arritt v. Grisell,* 567 F.2d 1267 (4th Cir. 1977); *Johnson v. Mayor & City Council of Baltimore,* 515 F.Supp. 1287 (D.Md.1981); *Usery v. Board of Educ. of Salt Lake City,* 421 F.Supp. 718 (D.Utah 1976).

In 1981, however, the Supreme Court said in *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), that a court "should not quickly attribute to Congress an unstated intent to act under its authority to enforce the Fourteenth Amendment," *id.* at 15, 101 S.Ct. at 1538, 67 L.Ed.2d at 706, and went on to hold that the Developmentally Disabled Assistance & Bill of Rights Act of 1975 was passed pursuant to Congress' spending powers. Thus, the movants in the instant case argue that *Pennhurst* casts doubt on the continued validity of the *Arritt* line of cases. They contend that like the Act at issue in *Pennhurst,* the 1974 amendments to the ADEA did not state which specific power Congress was exercising, and that the 1974 amendments were passed as part of a bill amending the Fair Labor Standards Act, an Act that was enacted pursuant to the commerce clause. Therefore, they argue, Congress exercised its commerce power in passing the ADEA amendments and the analysis of *National League of Cities* is appropriate. As state parks and recreation areas are a component of "governmental service that the states and political subdivisions have traditionally afforded their citizens," the ADEA amendments must be struck down as violative of the Tenth Amendment.[3]

This Court finds it unnecessary to consider the constitutional source of the 1974 ADEA amendments because it considers the amendments constitutional even if enacted under the commerce clause. The Fifth Circuit has held that not every exercise of Congress' commerce power when directed to states *qua* states is invalid under the Tenth Amendment. *Peel v. Florida Dep't of Transp., supra,* 600 F.2d at 1084. Instead, the Circuit has ruled that the policies of federalism underlying the decision in *National League of Cities* requires a balancing test to determine the constitutionality of Congressional action under the commerce clause.[4] *Id.* at 1083. In the instant case the Court must balance the exercise of Congress' commerce power against the impact of the ADEA on Georgia's integral governmental functions. In so doing, the Court concludes that the Act does not displace state decision-making, and does not "substantially restructure traditional ways in which the local governments have arranged their affairs." *National League of Cities v. Usery, supra,* 426 U.S. at 849, 96 S.Ct. at 2473.

In *National League of Cities* the Supreme Court was concerned with the financial burdens placed on the states by application of minimum wage and maximum hours rules. The Court felt that these strains might result in increased taxes, or worker lay-offs, or "forced relinquishment of important governmental activities." *Id.* at 847, 96 S.Ct. at 2472. *See Peel v. Florida Dep't of Transp., supra,* 600 F.2d at 1083. But the considerations that moved the *National League of Cities* Court do not arise from an application of the ADEA. Under the ADEA, states remain free to set all substantive terms of employment: it merely restricts them from classifying on the basis of age when age is an arbitrary consideration in the workplace. A state may still classify on the basis of age when age is a "bona fide occupational qualification," 29

---

3. Brief in Support of Defendants' Amendment to Defendants' Partial Motion to Dismiss, p. 6, (December 31, 1981), *quoting E. E. O. C. v. Wyoming,* 514 F.Supp. 595, 600 (D.Wyo.1981), *prob. juris. noted,* —— U.S. ——, 102 S.Ct. 996, 71 L.Ed.2d 291 (1982).

4. In this respect, the Fifth Circuit was drawing from Justice Blackmun's all important concurring opinion in *National League of Cities.* That decision was based on a 5–4 majority, and Justice Blackmun's deciding vote was premised on his understanding that the Court had adopted a balancing approach to determine the validity of federal interference with state functions. *See Peel v. Florida Dep't. Transp., supra,* 600 F.2d at 1084 n.16.

U.S.C. § 623(f)(1), and may classify employees according to reasonable factors other than age. 29 U.S.C. § 623(f)(3). *See U.S. E.E.O.C. v. County of Calumet,* 519 F.Supp. 195 (E.D.Wis.1981). Importantly, Georgia itself protects individuals from age discrimination in public employment, *Ga.Code Ann.* § 89–1701, *et seq.,* thereby evidencing that age discrimination is contrary to state policy and serves no sovereign state function. *U.S.E.E.O.C. v. County of Calumet, supra,* 519 F.Supp. at 202. Therefore this Court cannot say that Congress' extension of the ADEA to state and local governments is an unconstitutional exercise of its commerce power as prohibited by the Tenth Amendment.

In so holding, this Court is acting consistent with other Fifth Circuit decisions in collateral areas. In *Pearce v. Wichita County Hospital Board,* 590 F.2d 128 (5th Cir. 1979), the Fifth Circuit upheld the extension of the Equal Pay Act to the states as a constitutionally permissive exercise of Congress' commerce power. *Accord, Marshall v. Dallas Independent School District,* 605 F.2d 191, 193 n.3 (5th Cir. 1979); *Marshall v. Georgia Southwestern College,* 489 F.Supp. 1322, 1329 (M.D.Ga.1980). Like the ADEA, the Equal Pay Act looks to the provisions of the FLSA for enforcement, *see* 29 U.S.C. § 206(d)(3) (Equal Pay Act); 29 U.S.C. § 626(b) (ADEA), and the amendments to the Equal Pay Act applying it to the states were included in the same bill as the ADEA amendments. *See Fair Labor Standards Amendments of 1974, supra.* Moreover, the Equal Pay Act probably exerts a greater federal force on state employment decisions than the ADEA. That Act requires that men and women receive equal pay for equal work, 29 U.S.C. § 206(d), and possibly forces noncomplying

states to re-evaluate employment costs and displace state monies from other areas. Nevertheless the Fifth Circuit has ruled that the potential interference does not rise to the level of displacing a state's freedom to structure its employer-employee relationships. *Pearce v. Wichita County Hospital Board, supra,* 590 F.2d at 132. Such reasoning applies *a fortiori* in the case of the ADEA amendments, and hence this Court DENIES the defendants' motion to dismiss the ADEA claim.

## II. The Equal Protection Claim.

■ The defendants' next objection concerns the legality of the plaintiff's equal protection claim. The plaintiff alleges that the two individual defendants, Robert S. Case and Charles S. Skypek, violated her constitutional right to equal protection under the law, and are liable as such under 42 U.S.C. § 1983.[5] The defendants argue, however, that an equal protection claim can only be brought if a governmental body makes a legislative classification, or renders administrative decisions reflecting a pattern of class-based animus. Since the plaintiff's termination was an allegedly isolated employment decision,[6] the "plaintiff has not sufficiently asserted any facts or law that establishes a class of persons affected by the defendants' actions," and thus, contend the defendants, her constitutional claim must be dismissed.[7]

■ The Court does not adhere to this view of the equal protection clause. "An equal protection claim arises when an individual contends that he is receiving different treatment from that received by other individuals similarly situated." *Kuhar v. Greensburg-Salem School District,* 616 F.2d 676, 677 n.1 (3d Cir. 1980). The essence of

5. Plaintiff's Complaint, ¶ 21 (January 29, 1981). Section 1983 does not create any substantive rights. *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 617, 618, 99 S.Ct. 1905, 1915, 1916, 60 L.Ed.2d 508 (1979). Rather, it provides a remedy for violations of constitutional and federal substantive law committed under color of state law. *See Maine v. Thiboutot,* 448 U.S. 1, 4–8, 100 S.Ct. 2502, 2503–06, 65 L.Ed.2d 555 (1981).

6. The plaintiff does claim that she was one of two employees at the Jekyll Island—State Park Authority to be fired because of age, but this in itself would not evidence a pattern of age discrimination.

7. Defendants' Reply Brief to Plaintiff's Brief in Opposition of the Motion for Partial Dismissal, p. 3 (October 5, 1981).

the claim is that certain action is taken against the plaintiff because of his membership in a particular class, and that given the circumstances of the case or the nature of the class, such action is arbitrary and illegal. *See Adickes v. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970). The clause is not necessarily violated only upon a showing that similar action was taken against the entire class. *Woerner v. Brzeczek*, 519 F.Supp. 517, 519 (N.D. Ill.1981) ("an Equal Protection Clause claim need not involve a policy toward an entire class of persons."). The Supreme Court has explicitly held that "[a] single invidiously discriminatory governmental act ... [is] not necessarily ... immunized by the absence of such discrimination in the making of other comparable decisions." *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 n.14, 97 S.Ct. 555, 563 n.14, 50 L.Ed.2d 404 (1977). The key is that the single act of termination be shown to rise to the level of invidious discrimination: a pattern of age discrimination may create an inference that the termination at issue was motivated by a discriminatory intent, but it is not a necessary predicate in making that showing.[8] As such, the Court DENIES the defendants' motion to dismiss the constitutional claim.

III. Recovery of Compensatory and Punitive Damages Under the ADEA and 42 U.S.C. § 1983.

 Novel and interesting nonconstitutional issues are also raised by the motion to dismiss. The first and most important of these involves the plaintiff's claim for compensatory and punitive damages. The state correctly asserts that the ADEA does not provide for compensatory or punitive relief. *Murphy v. American Motors Sales Corp.*, 570 F.2d 1226, 1227 (5th Cir. 1978) (*per curiam*); *Dean v. American Security Insurance Co.*, 559 F.2d 1036, 1038 (5th Cir. 1977), *cert. denied*, 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978). The plaintiff answers, however, that she can be awarded compensatory and punitive damages if she is successful on her section 1983 claim. Section 1983 does allow the payment of compensatory relief for actual injuries caused by a deprivation of constitutional rights. *Carey v. Piphus*, 435 U.S. 247, 254–257, 98 S.Ct. 1042, 1047–48, 55 L.Ed.2d 252 (1978). Moreover, the Supreme Court has held that a trial court has the discretion to award punitive damages under section 1983 in order to punish malicious violations of constitutional rights. *Carlson v. Green*, 446 U.S. 14, 22, 100 S.Ct. 1468, 1474, 64 L.Ed.2d 15 (1980); *Carey v. Piphus, supra*, 435 U.S. at 257 n.11, 98 S.Ct. at 1048 n.11. Thus, the plaintiff's prayer for compensatory and punitive relief is properly brought as part of her section 1983 claim for a violation of the equal protection clause.

This does not end the issue, however. There is an assertion in the plaintiff's reply brief that she is bringing her section 1983 action not only to remedy a violation of her constitutional rights, but also to remedy a violation of her rights under the ADEA. There is the further assertion that as such, she can also recover the 1983 remedies of compensatory and punitive damages if she proves a substantive violation of the ADEA, which would be less arduous to prove than the alleged constitutional violation. The plaintiff cites as support for the assertion

---

8. This is not to say that to prove an act of discrimination was invidious and unconstitutional is similar to proving invidious discrimination on the grounds of race or national origin. Unlike classifications based on those latter characteristics, age-based classifications are not inherently suspect, and state action on such a basis does not violate the equal protection clause unless it is "not rationally related to furthering a legitimate state interest." *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976) (*per curiam*). But while the Court recognizes that the plaintiff faces formidable obstacles in presenting an equal protection clause claim, it does not think that the rational basis standard automatically shields the defendants from equal protection attack. If the plaintiff can prove that age was a motivating factor in her dismissal, and this factor was "so unrelated to the achievement of any combination of legitimate purposes" that it must be considered irrational, the plaintiff will have succeeded on her claim. *See Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979).

*Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), in which the Supreme Court ruled that section 1983 provides a remedy for violations of substantive federal law as well as for violations of constitutional rights.

Pretermitting the question of whether compensatory and punitive relief can be granted under section 1983 when the statute is invoked to remedy only substantive statutory violations, the Court holds that a section 1983 action cannot be brought for violations of the ADEA. In the recent case of *Pennhurst State School v. Halderman, supra,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981) the Supreme Court intimated in strong dicta, that section 1983 would not lie as a remedy for substantive statutory violations if the substantive statute provided its own exclusive remedy.[9] *Pennhurst State School v. Halderman, supra,* 451 U.S. at 27, 101 S.Ct. at 1545, 67 L.Ed.2d at 714 (majority opinion), 451 U.S. at 51, 101 S.Ct. at 1557, 67 L.Ed.2d at 728 (dissenting opinion). This Court thinks that the remedial provisions of the ADEA are exclusive, and the rights created by the ADEA may not be asserted within the remedial framework of section 1983.

The ADEA provides a comprehensive plan to prohibit discrimination in employment on the basis of age. Yet the thrust of the plan is to encourage compliance through a process of conciliation and mediation. *Rogers v. Exxon Research & Engineering Co.,* 550 F.2d 834, 841 (3d Cir. 1977), *cert. denied,* 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978); *see also Dean v. American Security Insurance Co., supra,* 559 F.2d at 1038. A condition precedent to the bringing of a private action is that the Equal Employment Opportunity Commission (EEOC) must be given sixty days notice.[10] 29 U.S.C. § 626(d). This is to allow the EEOC to mediate the grievance "by informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(b). Moreover, the right to bring a private action terminates upon the filing of an action by the EEOC. 29 U.S.C. § 626(c). Finally, notification to the EEOC must be made within 180 days after the alleged unlawful practices occurred, unless the party is also pursuing state relief. 29 U.S.C. § 626(d)(1). If a violation of ADEA substantive rights could be asserted through a section 1983 action, the plaintiff could avoid these specific provisions of the law. He could have direct access to the federal court, and also take advantage of generally broader statute of limitation guidelines.[11] The express time limitations could be altered, the administrative process bypassed, and the goal of compliance through mediation lost. The purposes and structure of the ADEA are inconsistent with the notion that the remedies it affords could be supplanted or substituted with other judicial relief. Accordingly, deprivation of rights under the ADEA cannot be the basis for a cause of action under section 1983. *See Great American Federal S. & L. Ass'n v. Novotny,* 442 U.S. 366, 370–378, 99 S.Ct. 2345, 2347–52, 60 L.Ed.2d 957 (1979) (deprivations of Title VII rights cannot be the basis for a section 1985(3) claim).

IV. The Plaintiff's claim for Attorney's Fees for Services Performed at the State Administrative Level.

The second novel question of federal law raised by the motion is whether the ADEA allows recovery of attorney's fees for services performed at the state adminis-

---

9. In so doing, the Court was adopting the view expressed by Justice Powell in *Maine v. Thiboutot, supra,* 448 U.S. at 23 n.11, 100 S.Ct. at 2507 n.11 (Powell, J., dissenting).

10. Originally, all administrative and enforcement functions under the ADEA were given to the Secretary of Labor, but such functions were transferred to the EEOC by section 2 of 1978 Reorg. Plan No. 1, 43 Fed.Reg. 19807, 92 Stat. 3781.

11. Limitations on section 1983 actions are determined by looking to applicable statutes if the suit had been brought in state court. *Pegues v. Morehouse Parish School Board,* 632 F.2d 1279, 1280, 1281 (5th Cir. 1980), *cert. denied,* 451 U.S. 987, 101 S.Ct. 2322, 68 L.Ed.2d 844 (1981).

trative level. The plaintiff seeks to recover $500.00 for attorney's expenses incurred in proceedings before the Georgia Office of Fair Employment Practices. Prior to filing her federal complaint, the plaintiff sought relief before that agency. A hearing was held on the charge of discrimination, and a Special Master concluded that the defendants' actions violated Georgia law. The instant suit was brought to supplement the relief provided at the state proceedings.[12]

The state admits that this question is one of first impression in this Circuit, but argues that the Court should follow the decision in *Kennedy v. Whitehurst*, 509 F.Supp. 226 (D.D.C.1981), where the court denied the recovery of similar attorney's fees to the ADEA complainants.

The Court declines to follow the suggested path. In *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980) the Supreme Court ruled that Title VII of the Civil Rights Act allows recovery of attorney's fees for legal services performed in state administrative proceedings. The *Whitehurst* court, however, found key distinctions between Title VII and the ADEA in the very areas the *Gaslight Club* Court had focused on in arriving at its result. Therefore, a similar result was deemed inappropriate. But this Court does not consider the two statutes disparate in the area most germane to resolving the question, and thinks the *Gaslight Club* holding applicable to persons seeking ADEA relief.

The first area the *Gaslight Club* Court examined in reaching its result was the language of the statute. Under the attorney's fees provision of Title VII, § 706(k), a trial court may allow reasonable attorney's fees "in any action *or proceeding* under this subchapter." 42 U.S.C. § 2000e–5(k) (emphasis added). Justice Blackmun, writing for the *Gaslight Club* Court, reasoned that the use of the disjunctive phrase "action or proceeding" indicated "an intent to subject the losing party to an award of attorney's fees and costs that includes expenses incurred for administrative proceedings."

*New York Gaslight Club, Inc. v. Carey, supra*, 447 U.S. at 61, 100 S.Ct. at 2029. The parallel provision in the Fair Labor Standards Act, 29 U.S.C. § 216, refers only to "action[s]." The *Whitehurst* court thought that the more spare language "suggest[ed a] restrictive approach . . . ." *Kennedy v. Whitehurst, supra*, 509 F.Supp. at 230.

The more important focus for the *Gaslight Club* Court, and thus Judge Gasch in *Whitehurst*, was the federal-state enforcement scheme contemplated by Title VII. Justice Blackmun found that it was Congress' intent to have Title VII remedies complement state and local legislation to form an integrated governmental policy to counter discrimination. *New York Gaslight Club, Inc. v. Carey, supra*, 447 U.S. at 63, 100 S.Ct. at 2030. As a result Title VII requires that:

> "where the unlawful employment practice is alleged to have occurred in a State or locality which has a law prohibiting the practice . . . 'no charge may be filed [with the EEOC] by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated.'"

*Id.* at 64, 100 S.Ct. at 2031, *quoting* 42 U.S.C. § 2000e–5(c). Justice Blackmun reasoned that denying recovery of fees in state proceedings would encourage complainants "to wait out the 60-day deferral period," and focus only on obtaining federal relief. "Only authorization of fee awards [for state proceedings]," he concluded, "ensures incorporation of state procedures as a meaningful part of the Title VII enforcement scheme." *Id.* at 65, 100 S.Ct. at 2031.

The *Whitehurst* court found a distinction in the procedure of the ADEA. It held that an employee seeking ADEA redress need not "exhaust any administrative remedies prior to instituting a civil action in federal court." *Kennedy v. Whitehurst, supra*, 509 F.Supp. at 230. Judge Gasch reasoned that "the only necessary administrative step in

**12.** Plaintiff's Complaint, ¶ 15 (January 23, 1981).

the bringing of an ADEA action is the statutory requirement that the would-be plaintiff give notice to the appropriate federal official of the intention to sue." *Id.* The *Whitehurst* court thus concluded that "[i]t appears ... Congress did not contemplate such an award [of attorney's fees] because, in ADEA actions, unlike Title VII actions, administrative proceedings are not a pervasive and integral part of the overall scheme of enforcement." *Id.* at 231.

The *Whitehurst* court, however, is incorrect concerning the remedial procedure for ADEA plaintiffs. Section 14(b) of the ADEA is almost *in haec verba* with section 706(b) of Title VII, 42 U.S.C. § 2000e–5(c). It provides that:

"... In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 ... before the expiration of sixty days after such proceedings have been commenced under the State law, unless such proceedings have been earlier terminated."

29 U.S.C. § 633(b). Moreover, in *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979) the Supreme Court ruled that section 14(b) requires an aggrieved person to resort to appropriate state remedies before instituting a federal ADEA action. *Id.* at 758, 99 S.Ct. at 2072. The Court in *Oscar Mayer* further held that the ADEA, paralleling Title VII, "is intended to give state agencies a limited opportunity to resolve problems of employment discrimination and thereby *to make unnecessary, resort to federal relief by victims of the discrimination.*" *Id.* at 755, 99 S.Ct. at 2071 (emphasis added). This is precisely the integrated governmental purpose that moved the *Gaslight Club* Court to allow attorney's fees for state proceedings in Title VII actions. Therefore, to deny an award of attorney's fees for state proceedings would frustrate the federal policy of "[incorporating] state procedures as a meaningful part of [the ADEA] enforce-

ment scheme." *New York Gaslight Club, Inc. v. Carey, supra*, 447 U.S. at 65, 100 S.Ct. at 2031.

The State of Georgia is one such state that provides remedies for persons injured by age discrimination. *Georgia Fair Employment Practices Act of 1978, Ga.Code Ann.* § 89–1701 *et seq.* In the course of seeking this relief a complainant may have to participate in an adversary hearing and apply for judicial review of administrative decisions. *Ga.Code Ann.* §§ 89–1715 (adversary hearing); 89–1717 (judicial review). Such functions necessitate the assistance of a lawyer. Indeed, the plaintiff in this case, realizing the requirement of pursuing available state relief before bringing an ADEA claim, successfully sought such relief. That she now seeks *additional* relief from a federal court is not germane to her claim for reimbursement of expended legal fees. The Court finds the pertinent goals and requirements of the ADEA and Title VII apposite, and concludes, applying *Gaslight Club*, that the ADEA authorizes an award of attorney's fees for legal services at the state administrative level. The defendants' motion to dismiss this portion of the complaint is DENIED.

V. The Plaintiff's Claim for an Award of Unvested Pension Benefits.

 The final issue raised by the motion to dismiss concerns the legality of the plaintiff's demand for $17,000.00, representing the projected value of lost future pension benefits. The state challenges the plaintiff's entitlement under the ADEA to such an award particularly because, even if the plaintiff had remained in the state's employment, her rights to pension benefits would not have vested until 1984. Support for the challenge is found in *Monroe v. Penn-Dixie Cement Corp.*, 335 F.Supp. 231 (N.D.Ga.1971), which held that a successful ADEA plaintiff cannot recover money damages beyond the compensation he would have been entitled to had he remained employed by the defendant until the trial date. *Id.* at 235.

The question whether an award of pension benefits is authorized under the ADEA remains undecided in this Circuit. *Monroe*, however, provides an apt starting point for analysis, because it is one of three cases which treat this question. *See Loeb v. Textron, Inc.*, 600 F.2d 1003, 1021 (1st Cir. 1979); *Hoffman v. Nissan Motor Corp. in U. S. A.*, 511 F.Supp. 352, 357 (D.N.H.1981).

The *Monroe* court examined the scope of monetary relief afforded by the ADEA. The court ruled that the measure of ADEA damages constitutes the difference between the compensation a plaintiff would have received between the date of termination and trial had he remained an employee of the defendant and all other compensation.[13] Moreover, the court viewed compensation as comprising all specific monetary benefits, including "pension benefits which would have vested prior to trial." *Monroe v. Penn-Dixie Cement, Corp., supra*, 335 F.Supp. at 235. *See Loeb v. Textron, Inc., supra*, 600 F.2d at 1021.

But the *Monroe* court also ruled that prospective damages for lost future compensation would not be appropriate, because the plaintiff was protected against future damage by the injunctive remedy of reinstatement.[14] If the plaintiff did not request reinstatement, he waived "any unliquidated future rights he might have against his former employer." *Monroe v. Penn-Dixie Cement, Corp., supra*, 335 F.Supp. at 235.

Presumably, the defendants' argument here is that valuing pension benefits that would not vest prior to trial constitutes valuing lost future compensation, and since the plaintiff does not seek reinstatement, she cannot properly claim the present monetary value of that future compensation. However, in a very real sense, the value of an employee's future pension benefits, vested or not, represents not the value of future compensation, but the value of compensation, together with interest and earnings, for services performed in the past. During her employment, part of the plaintiff's weekly paycheck included monies paid to a pension fund representing present compensation for her work of that week. If the plaintiff would have remained employed by the defendant, that set-aside process would have continued.

The Court thinks that a successful ADEA plaintiff is entitled to the present discounted value of a pension award based on employment from when the plaintiff was first hired until the date of the trial. *See Loeb v. Textron, Inc., supra*, 600 F.2d at 1021 (allowing pension award in instances where plaintiff's term of employment fails to meet employer's vesting requirement). Such an award would serve the broad purpose of making the victim of age discrimination "whole," *see Boddorff v. Publicker Ind. Inc.*, 488 F.Supp. 1107, 1113 (E.D.Pa.1980), yet would not violate *Monroe's* holding that damages are not to be projected beyond the trial date, because the award would represent compensation earned prior to the trial date, although normally received and enjoyed in the future. To disallow recovery would permit an employer "to stand on [vestiture] requirements that [a] plaintiff cannot meet because of the employer's own wrongful acts." *Loeb v. Textron, Inc., supra*, 600 F.2d at 1021. The Court therefore DENIES this aspect of the defendants' motion to dismiss and holds that if successful on her ADEA claim the plaintiff shall be entitled to be treated as if her pension benefits vested at the date of trial. *See Hoffman v. Nissan Motor Corp. in U. S. A., supra*, 511 F.Supp. at 357.

## VI. The Motion for Summary Judgment.

Individual defendant Robert S. Case, in addition to joining the motion to dismiss, alternatively moves for summary judgment. Case was the Executive Director of the Jekyll Island—State Park Authority during the time of the alleged un-

---

**13.** This interpretation is consistent with later holdings. *See Brennan v. Ace Hardware Corp.*, 495 F.2d 368, 373 (8th Cir. 1974).

**14.** Section 7 of the ADEA, 29 U.S.C. § 626(b), allows a court to grant appropriate equitable relief including "judgments compelling employment, reinstatement, or promotion . . . ."

lawful action. The plaintiff claims that he "either approved of or ratified" the decision to terminate made by Charles S. Skypek, Controller of the Jekyll Island—State Park Authority and the plaintiff's immediate supervisor.[15] Case, however, contends that he was not involved in the decision. In support of his contention he has submitted an affidavit from Skypek wherein Skypek testifies that he "had the power to fire . . . employees under [his] supervision," and that "the final decision as to the termination of [the plaintiff's] employment" was his.[16] In addition, the movant has submitted a copy of the plaintiff's sworn complaint before the Georgia Office of Fair Employment Practices, which only alleges discriminatory acts committed by Skypek and does not mention the movant. Finally, Case points to portions of the plaintiff's deposition where the plaintiff says that she merely assumes that her termination could not have been ordered without Case's prior approval.[17] The plaintiff has introduced no evidence contradicting the factual support offered by the movant, instead she merely reiterates her view that the action of Skypek "was approved and adopted by Case in his capacity as Executive Director."[18]

██ The Court agrees with the movant's contention and GRANTS his motion for summary judgment. A government official's liability under § 1983 may not be based on *respondeat superior* or vicarious liability principles. *Thompson v. Bass*, 616 F.2d 1259, 1268 (5th Cir.), *cert. denied*, 449 U.S. 983, 101 S.Ct. 399, 66 L.Ed.2d 245 (1980); *Adams v. Governor's Committee on Post-Secondary Education*, No. C80–624A (N.D.Ga. Dec. 16, 1980). *See also Wilkerson v. Siegfried Insurance Agency, Inc.*, 621 F.2d 1042, 1045 (10th Cir. 1980). Instead, the liability of a supervisory official depends on whether he has "commanded the result, or adopted a policy, a natural conse-

quence of which is the denial of a constitutional right." *Smith v. Ambrogio*, 456 F.Supp. 1130, 1135 (D.Conn.1978). In this case, the uncontroverted sworn testimony of Skypek and Bleakley shows that Skypek had the authority and did act independently of Case in terminating the plaintiff. Such testimony requires the plaintiff to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). This rule applies even in employment discrimination cases. *Sagers v. Yellow Freight System Inc.*, 529 F.2d 721, 728 n.13 (5th Cir. 1976) ("the mere fact that the [party opposing summary judgment] vigorously disputed the legal conclusions to be drawn from the facts presented by the [movant] was no bar to the grant of summary judgment."); *Womack v. Shell Chemical Co.*, 514 F.Supp. 1062, 1066 (S.D.Ala. 1981). Yet Bleakley's only response was to repeat the conclusory allegations outlined in her complaint. No evidence was presented to tie Case to the discharge of the plaintiff. Accordingly, his motion for summary judgment is GRANTED.

## VII. Conclusion

In conclusion, the Court DENIES the defendants' motion to dismiss and allows the plaintiff to proceed with her claim that the defendants, in discharging her from her employment with the state, violated both the ADEA and the equal protection clause of the Fourteenth Amendment. Moreover, the Court DENIES the defendants' motion to dismiss the plaintiff's claim for compensatory and punitive damages resulting from the alleged constitutional violation. It also rejects dismissal of the portion of the plaintiff's claim seeking attorney's fees for services performed at the state administrative level and for the value of lost pension benefits. The Court, however, does DISMISS the plaintiff's request for compensatory and

---

**15.** Plaintiff's Complaint, ¶ 14 (January 29, 1981).

**16.** Affidavit of Charles S. Skypek, ¶¶ 4, 5 (October 5, 1981).

**17.** Memorandum in Support of Robert S. Case's Partial Motion for Summary Judgment, p. 3 (September 1, 1981), *quoting* Deposition of Anne M. Bleakley, pp. 54, 55.

**18.** Plaintiff's Response to Statement of Uncontroverted Facts, ¶¶ 4, 7 (September 21, 1981).

punitive relief brought pursuant to her ADEA claim and RESTRICTS the scope of her claim for lost pension benefits to the present discounted value of those benefits computed from the start of her employment with the state to the date of trial. Finally, the Court GRANTS the motion of defendant Robert S. Case for summary judgment.