Charles W. RING, Plaintiff,

v.

CRISP COUNTY HOSPITAL AUTHORITY, by and through its Board of Directors, Individually and in their official capacity, Neil Copelan, Randy Sauls, Roderick McCrory, John Mace, John Hill Harris, Roe J. Davis, Wesley Odom, Fred Cown, Dr. Robert E. Barr, Eddie Daniels, Randy Folsom, Defendants.

Civ. A. No. 85–266–ALB–AMER.

United States District Court,
M.D. Georgia,
Albany–Americus Division.

Jan. 26, 1987.

David R. Sweat, Athens, Ga., for plaintiff.

Guy V. Roberts, Jr., Cordele, Ga., Jefferson D. Kirby, III, and Paula A. Hilburn, Atlanta, Ga., Dawn G. Benson, Albany, Ga., for defendants.

FITZPATRICK, District Judge.

This case is before the court on defendants' Motion to Dismiss and defendant Dr. Roderick McCrory's Motion for Summary Judgment. Also pending is plaintiff's Motion to Amend the Complaint. Plaintiff brought suit against the Crisp County Hospital Authority (the Hospital), the Hospital Administrator, the Assistant Administrator, the members of the Board of Directors of the Crisp County Hospital Authority, and Roderick McCrory alleging that he was discriminated against on the basis of age.

Mr. Charles W. Ring, the plaintiff, was employed by the Hospital as the Director of the X-Ray Department for approximately twenty-five years. On January 18, 1984, the plaintiff was placed on thirty days probation. At the end of this probationary period, the plaintiff was demoted from his job as Director of the X-Ray Department and made a staff technologist. Plaintiff then filed a charge with the Equal Employment Opportunity Commission (E.E.O.C.) alleging that his demotion was made on the basis of age. Following the filing of this charge with the E.E.O.C., the Hospital terminated his employment on June 28, 1985.

Plaintiff filed his complaint on December 23, 1985. At that time plaintiff was fifty-one years old. Plaintiff alleges that defendants terminated his employment and retaliated against him in violation of the Age Discrimination in Employment Act, 29 U.S.C.A. §§ 621–634 (ADEA) and in violation of his equal protection, due process and first amendment rights. Plaintiff asserts his constitutional claims through 42 U.S.C.A. § 1983. Plaintiff also alleges that defendant McCrory maliciously interfered with plaintiff's contract of employment with Crisp County Hospital.[1]

STATEMENT OF CLAIMS
COUNT I

38. Defendants have wrongfully demoted plaintiff and they have wrongfully terminated plaintiff's employment, under color of law, in violation of rights, privileges, and immunities secured to plaintiff by Constitution and the laws of the United States.

39. The rights, privileges and immunities involved herein include the right to procedural and substantive due process and equal protection of law secured to plaintiff by the Fourteenth Amendment of the Constitution of the United States and by 42 U.S.C. § 1983.

40. Plaintiff is entitled to injunctive relief and money damages in the form of actual, compensatory, and punitive damages for the violation of his civil rights and for denial of due process.

COUNT II

41. Defendant Roderick McCrory has unreasonably and maliciously interfered with plaintiff's contract of employment with Crisp County Hospital.

COUNT III

42. Defendants have retaliated against plaintiff for filing a charge of Age Discrimination in violation of the Age Discrimination in Employment Act.

COUNT IV

43. Defendants have retaliated against plaintiff for his exercise of rights guaranteed by the

---

1. There was some initial confusion whether plaintiff was alleging that the individual defendants had violated the ADEA as well as alleging a § 1983 action based on rights created by the ADEA. Plaintiff has responded that he "does *not* contend that his § 1983 claim is based on deprivation of rights guaranteed by the [ADEA]. He contends that his § 1983 claim is based on the substantive rights guaranteed to him by the First and Fourteenth Amendment to the United States Constitution." Plaintiff has also made clear that he is not attempting to hold liable the individual defendants for any violation of the ADEA. Defendants' confusion is understandable, however. Plaintiff's complaint reads as follows:

> 33. Plaintiff's age was a substantial motivating factor in defendants' decision to demote and subsequently terminate his employment....

> .    .    .    .    .

> 35. Plaintiff's contractual relationship with the Crisp County Hospital was unreasonably and maliciously interfered with by defendant Roderick McCrory who helped bring about plaintiff's discharge for personal and insubstantial reasons and because of plaintiff's age....

> .    .    .    .    .

Defendant McCrory is a radiologist who works at the Hospital. He charges a professional fee for his services rendered at the Hospital, and the fee is billed by Dr. McCrory through a billing office in Americus, Georgia. Dr. McCrory pays the fees for such billings, and the Hospital neither guarantees their collection nor shares in the billings. Dr. McCrory does not share in the bills sent out by the Hospital for the use of the Hospital's radiology equipment and personnel.

Dr. McCrory has stated in his affidavit that he does not perform periodic evaluations of Hospital employees and he does not participate in Hospital decisions concerning promotions, demotions, and raises. He has no authority to hire or fire anyone. He stated that on rare occasions he will be asked by the Hospital administrator for his professional opinion concerning the technical proficiency or performance of Hospital employees, such as radiology technicians. The use and weight given to these comments is solely in the discretion of the Hospital administration (McCrory Affidavit, ¶ 3).

On occasion Dr. McCrory has gone beyond giving his professional opinion of the technical proficiency of Mr. Ring, but that was at the request of the Assistant Administrator, Jack Randall Sauls. In one memorandum, Dr. McCrory stated that "I strongly feel he will take a marginal posture of not really agreeing with the policies/procedures he is directed to work under...." (McCrory Deposition, Exhibit 6). Dr. McCrory also repeatedly came to Sauls, the Assistant Administrator, in an attempt to resolve problems in the working relationship between Ring and McCrory. Sauls stated, however, that Dr. McCrory never came to him without first trying to resolve the problem with Ring. (Sauls Deposition, p. 108).

Defendants' motions raise three issues that this court must address: (1) whether the ADEA provides the exclusive remedy for age discrimination in employment thus prohibiting an action under § 1983 grounded on a violation of the fourteenth amendment guarantee of equal protection of the laws for that same age discrimination; (2) whether Dr. McCrory is a state actor such that he may be liable on a § 1983 claim; and (3), whether this court should exercise its pendent jurisdiction over plaintiff's state law claim for intentional interference with contract.

Counsel have presented extensive briefs to the court concerning the exclusivity of the ADEA. There is a dearth of cases that address the issue whether the A.D.E.A. is the exclusive remedy for age discrimination. A number of cases, however, discuss the exclusivity of Title VII as a remedy for discrimination in employment, and these cases are instructive. *Paterson v. Weinberger*, 644 F.2d 521, 525 (5th Cir.1981) (relying on *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976)).

■ The general rule is that a precisely drawn, detailed statute preempts more general remedies. *See Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). The Supreme Court followed this rule in *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) when it concluded that § 717 of the Civil Rights Act of 1964 provided the exclusive judicial remedy for claims of discrimination in federal employment. *Brown*, 425 U.S. at 836, 96 S.Ct. at 1969. The Court reasoned that the comprehensive statutory scheme, *Id.* at 829–34, 96 S.Ct. at 1966–68, as well as the lack of any legislative history indicating a contrary Congressional intent, *Id.* at 833–34, 96 S.Ct. at 1968, compelled its conclusion.

For similar reasons, the federal courts have concluded that the ADEA is the exclusive remedy for age discrimination in federal employment. *Ray v. Nimmo*, 704 F.2d 1480, 1485 (11th Cir.1983) (citing *Paterson v. Weinberger*, 644 F.2d 521, 524–25 (5th Cir.1981)). The plaintiff in *Ray* also claimed a violation of the fifth amendment

First Amendment to the United States Constitution.

right to due process.[2] The court concluded that the fifth amendment claim was a claim of unconstitutional deprivation separate and distinct from any claim based on age discrimination; therefore, plaintiff's fifth amendment claim was not preempted by the ADEA. *Ray,* 704 F.2d at 1485.

The critical issue in determining the exclusivity of the ADEA is that of Congressional intent. *See Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 3469–70, 82 L.Ed.2d 746 (1984). In *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), the court held that, in the context of private employment, Title VII did not preempt an independent action under 42 U.S.C. § 1981. In reaching that decision, the court relied upon the legislative history of the act which " 'manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes.' " *Johnson,* 421 U.S. at 459, 95 S.Ct. at 1719 (quoting *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 48, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974)). The court in *Alexander* stated that "legislative enactments in this area have long evinced a general intent to accord parallel or overlapping remedies against discrimination." *Alexander,* 415 U.S. at 48, 94 S.Ct. at 1019.

The legislative history of Title VII reveals a clear intent to leave untouched preexisting avenues of relief for private as well as state and local employees.

In establishing the applicability of Title VII to State and local employees, the Committee wishes to emphasize that the individual's right to file a civil action in his own behalf, pursuant to the Civil Rights Act of 1870 and 1871, 42 U.S.C. §§ 1981 and 1983, is in *no way affected.* During the floor debate surrounding the passage of Title VII of the Civil Rights Act of 1964, it was made clear that the Act was not intended to preempt existing rights under the National Labor Rela-

tions Act or the Railway Labor Act. Title VII was envisioned as an independent statutory authority meant to provide an aggrieved individual with an *additional remedy* to redress employment discrimination.... [T]he remedies available to the individual under Title VII are co-extensive with the individual's right to sue under the provisions of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and that the two procedures augment each other and are *not mutually exclusive.* The bill, therefore, by extending jurisdiction to State and local government employees does not affect existing rights that such individuals have already been granted by previous legislation....

...

Inclusion of State and local employees among those enjoying the protection of Title VII provides an *alternate* administrative remedy to the existing prohibition against discrimination perpetuated "under color of state law" as embodied in the Civil Rights Act of 1871, 42 U.S.C. § 1983.

H.R.Rep. No. 238, 912d Cong., 2d Sess., *reprinted in* 1972 *U.S.Code Cong. & Admin.News* 2137, 2154 (emphasis added). It is clear to this court that Title VII was not intended to be the exclusive remedy for race and sex discrimination for private or State and local employees, *Johnson v. Ballard,* 644 F.Supp. 333, 335–37 (N.D.Ga. 1986); however, this does not answer the question of whether the ADEA is the exclusive remedy for age discrimination.

The court rejects the plaintiff's argument that the legislative history of Title VII is applicable to the ADEA. Plaintiff argues that the two statutes should be construed *in pari materia* in determining the exclusivity of the ADEA. In *Christie v. Marston,* 451 F.Supp. 1142 (E.D.Ill.1978), the court construed Title VII and the ADEA *in pari materia* to bolster its conclusion that the ADEA was the plaintiff's

---

**2.** Plaintiff claimed that defendant deprived her of a protected interest in property without due process of law when it failed to abide by the

terms of its merit promotion rules. *Ray,* 704 F.2d at 1485.

exclusive remedy for age discrimination in federal employment. *Id.* at 1147.

The Supreme Court has recognized that Title VII may provide the appropriate model for construing the ADEA in some matters. In *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979), the Supreme Court Concluded that § 14(b), of the ADEA mandates that "in States with agencies empowered to remedy age discrimination in employment ... a grievant may not bring suit under the ADEA unless he has first commenced a proceeding with the appropriate state agency." *Id.* at 755, 99 S.Ct. at 2071. The court stated that since "the language of § 14(b) is almost *in haec verba* with § 706(c), and since the legislative history of § 14(b) indicates that its source was § 706(c), we may properly conclude that Congress intended that the construction of § 14(b) should follow that of § 706(c)." *Id.* at 756, 99 S.Ct. at 2071.

In *Lorillard v. Pons*, 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978), the Supreme Court declined to interpret the ADEA in light of the legislative history of Title VII of the Civil Rights Act of 1964. The Court noted that although the prohibitions of the ADEA were derived *in haec verba* from Title VII, there are some important remedial and procedural differences. *Id.* at 584, 98 S.Ct. at 872.

■ This court is persuaded to follow the lead of *Lorillard.* Although the prohibitions of the ADEA should perhaps be construed similarly to the prohibitions in Title VII, this court is not convinced that the ADEA should be construed *in pari materia* with Title VII. As stated in *Lorillard*, in passing the ADEA Congress adopted the procedures of the Fair Labor Standards Act, 29 U.S.C. §§ 201–219, and the substantive prohibitions of Title VII. The legislative history of Title VII is not applicable in determining Congress' intent in passing the ADEA.

Defendants argued that *Great American Federal Savings & Loan Association v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979) directs that the ADEA

should be the exclusive remedy for age discrimination. *Novotny* is inapposite because in that case the Court merely held that 42 U.S.C. § 1985(3) may not be invoked to redress violations of rights *created* by Title VII. *Id.* at 376–79, 99 S.Ct at 2351–52. In this case plaintiff does not seek to enforce through § 1983 his statutory rights created by the ADEA. Rather, the source of the rights the plaintiff claims are protected do not arise from a federal statute, but are his independent constitutional rights. The court in *Novotny* also relied on the legislative history of Title VII. The Court stated that:

> [T]he Civil Rights Act of 1866 and 1871 were explicitly discussed during the course of the legislative debates on both the Civil Rights Act of 1968 and the 1972 amendments to the 1964 Act, and the view was consistently expressed that the earlier statutes would not be implicitly repealed.

*Id.* at 377 n. 21, 99 S.Ct. at 2351 n. 21.

The defendants have also cited two cases from the Southern District of Georgia, *McCroan v. Bailey*, 543 F.Supp. 1201 (S.D. Ga.1982), and *Bleakley v. Jekyll Island-State Park Authority*, 536 F.Supp. 236 (S.D.Ga.1982). The plaintiff in *McCroan* alleged a § 1983 cause of action predicated upon plaintiff's right, as secured by the ADEA, to be free from age discrimination in employment. The court held that rights created by the A.D.E.A. cannot be enforced through § 1983. *McCroan*, 543 F.Supp. at 1209–10. The plaintiff in *McCroan* did not claim a violation of equal protection as part of her § 1983 claim.

The holding in *Bleakley* is not as straightforward as in *McCroan.* In *Bleakley* the plaintiff brought her § 1983 action to remedy a violation of her rights under the ADEA as well as a violation of her constitutional rights. *Bleakley*, 536 F.Supp. at 241. As in *McCroan*, the court in Bleakley held that "the rights created by the ADEA may not be asserted within the remedial framework of section 1983. *Id.* at 242. This comports with other courts which have held that one cannot premise a

§ 1983 action on the violation of rights created by Title VII. *See, e.g., Day v. Wayne County Bd. of Auditors,* 749 F.2d 1199 (6th Cir.1984). The court did not conclude that the ADEA was the exclusive remedy for age discrimination, however, when it stated that "the plaintiff's prayer for compensatory and punitive relief is properly brought as part of her section 1983 claim for a violation of the equal protection clause." *Id.* at 241. The court in *Bleakley* did not discuss Congress' intent in deciding that the plaintiff could bring a § 1983 action to enforce her equal protection rights.

■ After careful consideration, this court concludes that the ADEA is the exclusive remedy for claims of age discrimination, whether those claims are founded on the Constitution or on rights created by the ADEA. It is the underlying conduct and not the rights asserted that determined the remedy. Congress established an elaborate statutory framework when it passed the ADEA. Central to that framework is the requirement that the E.E.O.C. attempt to "eliminate any alleged unlawful practice by methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(d). *See Edwards v. Kaiser Aluminum & Chemical Sales, Inc.,* 515 F.2d 1195, 1197-98 (5th Cir.1975). The efforts of the E.E.O.C. are an integral part of the statutory scheme that easily could be thwarted by a plaintiff filing a § 1983 claim. "Congress did not intend to allow a plaintiff to bypass the statutory scheme embodied in the language of the ADEA." *McCroan,* 543 F.Supp. at 1209. "In the absence of strong indicia of a contrary congressional intent, [this court is] compelled to conclude that Congress provided precisely the remedies it considered appropriate." *Middlesex County Sewerage Authority v. National Sea Clammers,* 453 U.S. 1, 15, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981).

In this case there is no legislative history which indicates that Congress did not intend the ADEA to be the exclusive remedy for age discrimination. By establishing the ADEA's comprehensive scheme for the resolution of employee complaints of age discrimination, Congress clearly intended that all claims of age discrimination be limited to the rights and procedures authorized by the ADEA. *Brown v. General Services Admin.,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) (Title VII exclusive remedy for federal employees because there was no legislative history indicating contrary congressional intent); *Paterson v. Weinberger,* 644 F.2d 521 (5th Cir.1981) (ADEA exclusive remedy for federal employees because there was no legislative history indicating a contrary congressional intent); *cf. Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 15, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981); *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) (Title VII not exclusive remedy for discrimination in private employment because of legislative history indicating a contrary congressional intent); *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

■ Although this court concludes that the ADEA is the exclusive remedy for age discrimination, that does not mean that all of plaintiff's § 1983 claims are preempted. Plaintiff also seeks to enforce his due process and first amendment rights through his § 1983 claim, and these claims of constitutional deprivation are distinct from any claim of age discrimination alleged by the plaintiff. Thus, the ADEA does not prevent the plaintiff from asserting his due process and first amendment claims against the defendants. *Ray v. Nimmo,* 704 F.2d 1480, 1485 (11th Cir.1983).

■ This court must also decide whether Dr. McCrory can be held liable under § 1983. There is no doubt "that a private party acting pursuant to state law or in conjunction with state officials may, in certain circumstances, incur liability under section 1983." *Scott v. Dixon,* 720 F.2d 1542, 1545 (11th Cir.1983). In *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), the Supreme Court stated that in order for

conduct to amount to state action it must "be fairly attributable to the State." *Id.* at 937, 102 S.Ct. at 2753. The Court established a two-part test to determine the existence of state action.

First, the deprivation must be caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state or by a person for whom the state is responsible.

*Id.*

The second part of the test requires that: Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the state.

*Id.*

Plaintiff's § 1983 claims against Dr. McCrory must fail because they cannot meet the second part of the *Lugar* test. Dr. McCrory cannot in these circumstances "fairly be said to be a state actor." *Id.* This case clearly does not come under those decisions which held that a doctor may be a state actor when he or she decides that a patient should be involuntarily confined. *See, e.g., Morrison v. Washington County,* 700 F.2d 678 (11th Cir.), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983).

In *Morrison,* the defendant doctor arranged for a patient suffering from *delirium tremens* to be confined by the county police. The doctor " 'acted together with' and 'obtained significant aid from state officials.' " *Morrison,* 700 F.2d at 684. Under those circumstances the Court of Appeals said it was error for the District Court to hold that the doctor was not a state actor. *Id.*

In *Calvert v. Sharp,* 748 F.2d 861 (4th Cir.1984), *cert. denied,* 471 U.S. 1132, 105 S.Ct. 2667, 86 L.Ed.2d 283 (1985), the court held that "[t]he professional obligations and functions of a private physician establish that such a physician does not act under color of state law when providing

medical services to an inmate." *Id.* at 863. Similar considerations compel this court to conclude that Dr. McCrory cannot be said to be a state actor. Dr. McCrory was not an employee of the Hospital, and he did not have authority to hire or fire employees of the Hospital. While Dr. McCrory did give to Hospital administrators his opinion of plaintiff's performance, the use and weight given to these comments was solely in the discretion of the Hospital administration.

In *Lugar,* the Supreme Court stated that "[c]areful adherence to the 'state action' requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power." *Lugar,* 457 U.S. at 936, 102 S.Ct. at 2753. If that statement means anything it means that Dr. McCrory's comments about the plaintiff's performance in the X-Ray department cannot amount to state action. "Private physicians exercise their own judgment and make their own medical decisions according to standards not established by the state." *Calvert,* 748 F.2d at 863. As a physician, Dr. McCrory "owes his ethical obligation and undivided loyalty to his patient[s]." *Id.* This court believes that this duty encompasses Dr. McCrory's efforts to insure that his patients at the Hospital received proper care. If conduct such as that undertaken by Dr. McCrory made him a state actor, hospitals would be unduly restricted in their efforts to provide quality health care to the public whom they serve.

■ The final issue this court must decide is whether it should exercise its pendent jurisdiction over plaintiff's state law claim for intentional interference with contract. "Whether to exercise pendent jurisdiction over a state law claim is a decision committed to the sound discretion of the trial court." *Hill v. Georgia Power Co.,* 786 F.2d 1071, 1077 (11th Cir.1986). In this case the court declines to exercise its pendent jurisdiction over the state law claims against Dr. McCrory.

In conclusion, the court holds that the ADEA is the exclusive remedy for all claims of age discrimination. This does not

preclude plaintiff from pursuing his first amendment and due process claims through a § 1983 action against the defendants other than Dr. McCrory. The court otherwise DENIES defendants' Motion to Dismiss. Further, it is this court's ruling that Dr. McCrory is not a state actor as a matter of law and cannot be subject to liability under § 1983. Defendant McCrory's Motion for Summary Judgment is GRANTED. The court declines to exercise its pendent jurisdiction over the state law claims. Accordingly, the state law claims of intentional interference with contract are dismissed without prejudice. Finally, plaintiff's Motion to Amend is GRANTED. The court has discretion over whether to grant or deny a motion to amend. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 327, 91 S.Ct. 795, 800, 28 L.Ed.2d 77 (1971). In this case plaintiff's motion should be granted because it does not appear to have been made for purpose of delay, and, if granted, will not be unduly prejudicial to the nonmovants. *Davis v. Payless Cashways, Inc.*, 661 F.2d 1022, 1024 (5th Cir.1981).