United States Court of Appeals,

Fifth Circuit.

Nos. 91–2493, 91–6043.

Richard L. BRITT and Timothy Jackson, Jr., et al., Plaintiffs–Appellants,

v.

The GROCERS SUPPLY COMPANY, INC., Defendant–Appellee,

James E. HAMILTON, et al., Plaintiffs–Appellants,

v.

The GROCERS SUPPLY COMPANY, INC., Defendant–Appellee.

Dec. 15, 1992.

Appeals from the United States District Court for the Southern District of Texas.

Before REAVLEY, HIGGINBOTHAM, and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

These two cases were consolidated on appeal, but tried separately. Both suits were brought by groups of former employees of Grocers Supply Company. The Britt plaintiffs appeal the district court's holding that the National Labor Relations Act, 29 U.S.C. § 151–187 (1988), preempts claims of age discrimination asserted under the Age Discrimination in Employment Act, 29 U.S.C. § 621–634 (1988). They also appeal the district court's granting summary judgment on the merits of their age discrimination claims. 760 F.S. 606. The Hamilton plaintiffs appeal the district court's granting a directed verdict in favor of the defendants on the plaintiff's age discrimination claims. They also appeal the district court's granting summary judgment on their claims of breach of contract and intentional infliction of emotional distress and duress. The defendant, Grocers Supply, argues that the Britt plaintiffs' notice of appeal is insufficient under Rule 3(c) of the Federal Rules of Appellate Procedure. We find that the Age Discrimination in Employment Act (ADEA) controls this litigation and not the National Labor Relations Act (NLRA) and that notice of appeal by the Britt plaintiffs was sufficient under Rule 3(c) and its interpretation in *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988). Additionally, we find no error in the summary judgment

in the Britt case, nor do we find error in the directed verdict or summary judgment in the Hamilton case. In sum, we disagree with the district court on the preemption issue but affirm its judgment.

## STATEMENT OF FACTS

The underlying facts in both cases are the same. In December 1986, the work force of Grocers Supply Company, a Texas Corporation, went on strike after contract negotiations broke down. The work force consisted primarily of employees over forty years old. Grocers Supply immediately hired replacement workers to continue its operations. The replacement workers were told that their positions were temporary; sometime before the end of the strike, however, Grocers offered them permanent positions. Negotiations failed, and in April 1987, the striking workers made an unconditional offer to return to work. The Union explained to the workers that they could return to work only when Grocers needed them. In fact, Grocers and the Union negotiated a "recall" agreement to govern the order of recall as vacancies occurred. The Hamilton plaintiffs contend that this offer to return to work was made in response to a promise by Grocers that if the workers would return unconditionally, they would all be rehired within a few weeks.

Very few of the former workers were ever recalled. Grocers maintains that it simply had few hiring needs during this period due to the low turnover and increased productivity of its new workers. The Plaintiffs assert that the slow rehiring and the undesirability of those jobs offered was purposefully orchestrated to reduce the age of the work force and to encourage older workers to retire and take their retirement benefits.

Two groups of workers sued Grocers as a result of their failure to be recalled. Richard L. Britt and Timothy Jackson, Jr., individually and on behalf of others similarly situated, with 126 additional plaintiffs opting in,[1] assert only an ADEA claim. They contend that their "permanent replacement" was a sham and that they were refused reinstatement because of their age. The district court granted summary judgment on this claim based on two grounds. First, the court held that the ADEA claim was preempted by the NLRA. Second, the district court held that Britt failed to

---

[1]For simplicity purposes, the plaintiffs in each case will be referred by the named individual plaintiffs, Britt and Hamilton.

demonstrate a genuine issue of material fact on the discrimination claim sufficient to survive summary judgment.

James E. Hamilton, et al. assert an ADEA claim, a 29 U.S.C. § 301 breach-of-contract claim, and state law claims of intentional infliction of emotional distress and duress. The district court granted summary judgement for Grocers on both the § 301 contract claim and the state law claims. The ADEA claim went to trial, but the district court directed a verdict for Grocers at the close of Hamilton's evidence.

DISCUSSION

*I. Notice of Appeal.*

Before addressing other issues, we must address whether the Notice of Appeal for the Britt plaintiffs is sufficient. Grocers contends that the notice is insufficient to satisfy the specificity requirement under Federal Rule of Appellate Procedure 3(c) and its interpretation under *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988).

Rule 3(c) provides that a notice of appeal "shall specify the party or parties taking the appeal." In *Torres,* the Supreme Court interpreted FRAP 3(c) strictly and held that the designation "*et al.*" in the notice of appeal rather than the name of the appealing party resulted in a failure of that party to appeal, thus depriving the appellate court of jurisdiction.

"The purpose of the specificity requirement of Rule 3(c) is to provide notice both to the opposition and to the court of the identity of the appellant or appellants." *Torres,* 487 U.S. at 318, 108 S.Ct. at 2409. The problem facing the Supreme Court in *Torres* was that the use of *et al.,* with nothing further, left it uncertain which parties were taking the appeal. The Court held that thus designating the appealing parties "would leave the appellee and the court unable to determine with certitude whether a losing party not named in the notice of appeal should be bound by an adverse judgment." *Id.* The Court, however, went on to state that the specificity requirement of Rule 3(c) may be met "by some designation that gives fair notice of the specific individual or entity seeking to appeal." *Id.*

The plaintiffs in the Britt case consist of the original named plaintiffs, Richard Britt and

Timothy Jackson, and another 126 opt-in plaintiffs under 29 U.S.C. § 216(b). The Notice of Appeal was styled "Richard L. Britt and Timothy Jackson, Jr., et al." The body of the notice, however, identified the remaining appellants as "all other 129 consenting Plaintiffs who have previously filed their written consent pursuant to 29 U.S.C. Section 216(b)."[2] Because the notice in this case states that all of a particular defined group are taking an appeal, and the individual identities are readily ascertainable in the record, the specificity requirement is satisfied. Such a designation is sufficient to give fair notice of the individuals appealing.

The cases relied on by Grocers involve situations in which the unnamed appellants could be included only if the term "et al.", with nothing further, was considered specific enough to satisfy Rule 3(c). The Notice of Appeal in this case is distinguishable. The plaintiffs, other than the two named plaintiffs, were clearly identified as those parties "who filed their written consent" as required by Section 216(b). Their identities are in the record. Rule 3(c) does not require that all the plaintiffs be identified by given and surname in the notice of appeal. This Court has stated that it "has looked to the purpose rather than the letter of Rule 3(c)'s specificity requirement" when determining the sufficiency of a notice of appeal. *Brotherhood of Ry. Carmen v. Atchison, T. & S.F. Ry.,* 894 F.2d 1463, 1465 n. 3 (5th Cir.), *cert. denied,* ⸺ U.S. ⸺, 111 S.Ct. 131, 112 L.Ed.2d 99 (1990).

Additionally, this Court has recognized that in some circumstances even the designation "et al." is sufficient to identify the parties. In *Pope v. Mississippi Real Estate Commission,* 872 F.2d 127, 129 (5th Cir.1989), this Court held that the use of "et al." is sufficient if there are only two parties to the suit. Thus, it is not necessary to list the names of each appealing party, as long as there can be no mistake about which parties are intending to appeal. If papers are filed in a fashion that is technically at variance with the letter of a procedural rule, a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires. *See Torres,* 487 U.S. at 317, 108 S.Ct. at 2408; *see also Houston v. Lack,* 487 U.S. 266,

---

[2]Grocers also argues that the notice is uncertain because it refers to 129 opt-in plaintiffs and in reality only 126 persons had opted into the action. Apparently, the 129 was a typographical error. This argument is without merit. If "all 129" were appealing, it follows that the 126 plaintiffs that Grocers was aware of were all appealing.

273–75, 108 S.Ct. 2379, 2383–84, 101 L.Ed.2d 245 (1988). Unlike the defendant in *Torres,* Grocers had fair notice of the identity of the Appellants. Consequently, its argument that this Court lacks jurisdiction over Britt's appeal must fail.

## II. The Preemption Issue.

Turning to the question whether this Court has jurisdiction over the age discrimination claims, we hold that this Court does have jurisdiction to hear the claims asserted under the Age Discrimination in Employment Act (ADEA).[3] More specifically, we hold that, to the extent the age discrimination claims encompass conduct that is arguably covered by the National Labor Relations Act, the ADEA governs the prosecution of those claims and not the NLRA.

The issue of the jurisdiction of this Court was raised on appeal in the Britt case. Although not raised by the Hamilton plaintiffs, it is our duty to determine, *sua sponte,* if necessary, whether we have jurisdiction over any case before us. *Griffith v. Johnston,* 899 F.2d 1427, 1429 (5th Cir.1990), *cert. denied,* ⸺ U.S. ⸺, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991); *Morales v. Pan American Life Ins. Co.,* 914 F.2d 83 (5th Cir.1990). Therefore, our decision on this issue affects the disposition of both cases on this appeal.

## A. Preemption Analysis

Whether the NLRA preempts the ADEA, or vice versa, is an issue of first impression before this court. The district court in the Britt case determined, in a summary judgment proceeding, that the plaintiffs' ADEA claims were preempted by the NLRA. The court alternatively held that, on the merits of the ADEA claim, the plaintiffs failed to establish a genuine issue of fact and granted the defendant's motion for summary judgment. The defendants in the Hamilton case also argued that the NLRA preempted the ADEA; however, the district court overruled this argument without explanation. The plaintiffs later lost on the ADEA claims by a directed verdict.

The district court in Britt, in determining that the NLRA preempted the ADEA, relied on *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters,* 436 U.S. 180, 98 S.Ct.

---

[3]If the NLRA preempts the ADEA, then primary jurisdiction of this dispute lies with the NLRB and not the courts.

1745, 56 L.Ed.2d 209 (1978).  We believe, however, that such reliance is misplaced.  Moreover, Grocers' application of the preemption doctrine in its argument on appeal is also flawed.

The preemption doctrine in labor law has evolved for more than three decades around a conceptual core with various appendages.[4]  An initial line of preemption analysis, developed in *San Diego Building Trades Council v. Garmon*[5] and its progeny, was based predominantly on the primary jurisdiction of the National Labor Relations Board (NLRB).  A second line of analysis also developed in cases "focusing upon the crucial inquiry whether Congress intended that the conduct involved be unregulated because [it has been] left "to be controlled by the free play of economic forces.' "[6]  The resulting preemption doctrine reflects the Supreme Court's efforts to accommodate conflicting regulatory schemes without the need to take a strictly mechanistic approach to the discrete problems involved.

The preemption doctrine is anchored in the Supremacy Clause of the Constitution.  In determining the areas of labor law in which the states have overstepped their bounds, the Supreme Court has focused on Congress' actual regulation of labor relations rather than Congress' potential power to regulate in this area.

Since the enactment of the NLRA, the Supreme Court has justified the results of its preemption decisions in terms of perceived congressional intent to preempt, although the Act provides no specific guidance for applying this principle to individual instances of regulatory conflict.  As the theory of preemption has evolved, the more recent cases reflect the difficulty of discerning congressional intent and instead appear to have been decided upon considerations of labor relations policy.  *See Windfield v. Groen Div., Dover Corp.,* 890 F.2d 764, 766–68 (5th Cir.1989).

As stated in *Windfield,* the courts have carved out several significant exceptions to the

---

[4]*See* 2 Charles J. Morris, *The Developing Labor Law* 1504–1598 (2d ed. 1983);  Charles J. Morris, *The Developing Labor Law:  1982–1988,* 650–690 (2d ed. Supp. V 1989).

[5]359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).  This type of preemption is called "Garmon" preemption.

[6]*Lodge 76, International Ass'n of Machinists & Aerospace Workers v. Wisconsin Employment Relations Comm'n,* 427 U.S. 132, 140, 96 S.Ct. 2548, 2553, 49 L.Ed.2d 396 (1976).  This type of preemption is sometimes called "Machinist" preemption.

preemption doctrine. One such exception is the "collateral issue" exception. In *Connell Construction Co. v. Plumbers & Steamfitters Local Union No. 100,* 421 U.S. 616, 626, 95 S.Ct. 1830, 1836, 44 L.Ed.2d 418 (1975), the Court held that a *federal* antitrust law was *not* preempted by the NLRA under the collateral issue exception. Under *Garmon,* however, *state* antitrust law was preempted. The Court held that "the federal courts may decide labor law questions that emerge as collateral issues in suits brought under independent federal remedies." *Id.* at 626, 95 S.Ct. at 1837. As an independent federal remedy, the ADEA falls under this exception.[7] Traditional preemption analysis, however, is still not quite satisfactory.

*B. Preemption and Conflicts between Federal Statutes*

Because the root of the preemption doctrine lies in the tension between federal and state regulation of labor relations, the analysis of the tension between two conflicting federal statutes is somewhat different. A number of cases reflect this awareness.[8] In *United States v. Boffa,* 688 F.2d

---

[7]Although the Court calls this an exception to the preemption doctrine, the analysis is more comparable to that of *Hood v. Smith's Transfer Corp.,* 762 F.Supp. 1274 (W.D.Ky.1991), discussed *infra,* which candidly recognized that the preemption doctrine does not apply in situations where two federal statutes conflict.

[8]In *United States v. International Brotherhood of Teamsters,* 948 F.2d 98 (2d Cir.1991), *vacated sub nom. Yellow Freight Systems, Inc. v. United States,* —— U.S. ——, 113 S.Ct. 31, —— L.Ed.2d —— (1992) (No. 91–1938), the court determined that the district court was entitled to exercise jurisdiction over the parties pursuant to the All Writs Act, 28 U.S.C. § 1651 (1988), and was not preempted from that jurisdiction by the authority of the NLRB to determine issues concerning unfair labor practices under the NLRA. The following excerpt illustrates the inapplicability of the traditional preemption analysis when two federal statutes are involved.

> [Appellant] contends that the conduct at issue in this case is directly regulated by sections 7 and 8(a)(1) of the NLRA ... and accordingly that the NLRB has exclusive jurisdiction with respect to it. In this connection, *San Diego Building Trades Council v. Garmon,* ... a case involving attempted state regulation of conduct constituting an NLRA unfair labor practice, stated that "[w]hen an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the [NLRB] if the danger of state interference with national policy is to be averted." ...

> This rule, however, is not uniformly applied even as to state regulation. *See, e.g., Sears Roebuck & Co. v. San Diego County Council of Carpenters* ... (enforcement of state trespass laws by state court allowed as to "picketing which is arguably—but not definitely—prohibited or protected by federal law"). Furthermore, where federal laws and policies other than the NLRA are implicated, the *Garmon* rule is frequently considered inapplicable. *See, e.g., Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6,* 493 U.S. 67, 110 S.Ct. 424,

919 (3d Cir.1982), *cert. denied,* 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 494 (1983), the issue was whether the doctrine of primary jurisdiction operated to displace a federal criminal statute that independently prohibited conduct that is also arguably prohibited by the NLRA. In rejecting preemption by the NLRA, the court stated "the doctrine of primary NLRB jurisdiction is of constitutional dimension; it is grounded, at least in part, upon considerations of federal supremacy.... No such constitutional concerns are implicated when a federal criminal statute is said to impinge upon the primary jurisdiction of the NLRB." *Id.* at 932.

*Hood v. Smith's Transfer Corp.,* 762 F.Supp. 1274 (W.D.Ky.1991), provides the most comprehensive discussion of the preemption doctrine and its relation (or lack thereof) to the analysis of two conflicting federal statutes. In holding that the preemption doctrine has no application when two federal statutes conflict, the court determined that the ultimate resolution of the issue depended upon whether: "(1) the unfair labor practices alleged by defendants are merely collateral to plaintiffs' non-NLRA federal claims and (2) plaintiffs' non-NLRA federal claims arise under statutes which provide independent federal remedies." *Id.* at 1283. In the case we are considering the plaintiffs' non-NLRA federal claims arise under the ADEA which provides an independent federal remedy.

Additionally, we have held that claims under Title VII are not preempted by the NLRA.[9]

> 107 L.Ed.2d 388 (1989) ... (district court had jurisdiction to hear fair representation claim although union's breach of duty of fair representation might violate § 8(b) of the NLRA); *International Bhd. of Boilermakers v. Hardeman,* 401 U.S. 233, 237–39, 91 S.Ct. 609, 612–13, 28 L.Ed.2d 10 (1971) (district court had jurisdiction to hear claim that unlawful expulsion from union violated § 101(a)(5) of Labor–Management Reporting and Disclosure Act ... although expulsion was arguably an unfair practice violative of §§ 8(b)(1)(A) and 8(b)(2) of NLRA); ... *United States v. Boffa,* 688 F.2d 919, 931 (3d Cir.1982) (in RICO prosecution alleging mail fraud predicates and substantive mail fraud violations, prohibitions of defendants' conduct by § 8 of the NLRA would not preclude "enforcement of a federal statute that independently proscribes that conduct"), *cert. denied,* 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 494 (1983). Here, although the appointed officials are directly applying the NLRA rather than some separate body of law, considerations that we have previously recognized with respect to the Consent Decree argue compellingly for a ruling against exclusive NLRB jurisdiction.

*Id.* at 105 (emphasis added) (some citations omitted).

[9]We have recognized that Title VII and the NLRA are statutes with separate and independent remedies. *See Guerra v. Manchester Terminal Corp.,* 498 F.2d 641, 658 (5th Cir.1974),

These cases hold that a remedy is available under both the NLRA and Title VII and recognize concurrent jurisdiction between Title VII and the NLRA.[10]

As evidenced by the discussion above, traditional preemption analysis does not apply in a conflict between two federal statutes.

*C. Hobbs v. Hawkins*

The most recent case in this Circuit to apply the preemption doctrine is *Hobbs v. Hawkins,* 968 F.2d 471 (5th Cir.1992). The analysis in *Hobbs,* however, is inapplicable in this case. This decision holds that a claim under 42 U.S.C. § 1983 is preempted by the NLRA. *Hobbs* employs traditional preemption analysis which considers the relationship between federal and state regulation of labor relations rather than addresses the problems involved with conflicting federal statutes. *Hobbs* is unique, however, because the plaintiff's claims arose specifically under the NLRA (§ 7, § 8 and § 9), and were asserted as such. The plaintiff merely tried to enforce these NLRA claims through § 1983.

Section 1983 does not create substantive rights, but was designed to provide a remedy for violations of other statutory as well as constitutional rights. Many cases hold that, where Congress has enacted a statute that covers a *specific substantive area* providing *specific remedies,* a cause of action under § 1983 is foreclosed. In the case at hand, the ADEA covers a specific substantive area of the law and provides a specific remedy for violations of the statute. As a result, a number of cases

---

*overruled on other grounds by Bhandari v. First Nat'l Bank of Commerce,* 829 F.2d 1343 (5th Cir.1987), *vacated,* 492 U.S. 901, 109 S.Ct. 3207, 106 L.Ed.2d 558 (1989), *reinstated on remand,* 887 F.2d 609 (5th Cir.1989), *cert. denied,* 494 U.S. 1061, 110 S.Ct. 1539, 108 L.Ed.2d 778 (1990). The *Guerra* panel noted that

> though Title VII and the NLRA may overlap in the area of employment discrimination, their confluence must not be exaggerated.... [A] plaintiff does not lose his right to an adjudication regarding the causes of action created by Title VII ... simply because the conduct of which he complains also offends section 8 of the NLRA.

*Guerra,* 498 F.2d at 658 n. 46.

[10]*Guerra,* 498 F.2d at 651 n. 20, and cases cited therein. Because of the cases holding that the ADEA is the *exclusive remedy* for age discrimination claims and those cases rejecting an analogy between Title VII and the ADEA, we decline to hold that the courts under the ADEA and the NLRB have concurrent jurisdiction over these claims.

also hold that an age discrimination claim brought under § 1983 is preempted by the ADEA. Therefore, contrary to Grocers' assertions, the analysis in *Hobbs* does not control in this case.

## D. The Exclusivity of the ADEA

Finally, a decision that the NLRA preempts the ADEA cannot be reconciled with the many cases holding that the ADEA is the exclusive remedy for age discrimination claims. *See White v. Frank,* 718 F.Supp. 592, 595 (W.D.Tex.1989), *aff'd,* 895 F.2d 243 (5th Cir.1990), *cert. denied,* ⸺ U.S. ⸺, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990); *Paterson v. Weinberger,* 644 F.2d 521, 524–25 (5th Cir.1981); *Zombro v. Baltimore City Police Dep't,* 868 F.2d 1364, 1369 (4th Cir.1989), *cert. denied,* 493 U.S. 850, 110 S.Ct. 147, 107 L.Ed.2d 106 (1989); *Ray v. Nimmo,* 704 F.2d 1480, 1485 (11th Cir.1983); *Ring v. Crisp County Hosp. Auth.* 652 F.Supp. 477, 482 (M.D.Ga.1987); *Dodson v. U.S. Army Fin. & Accounting Ctr.,* 636 F.Supp. 894 (S.D.Ind.1986); *Morgan v. Humboldt County School Dist.,* 623 F.Supp. 440 (D.C.Nev.1985); *Tranello v. Frey,* 758 F.Supp. 841 (W.D.N.Y.1991), *aff'd,* 962 F.2d 244 (2d Cir.1992), *petition for cert. filed,* 61 U.S.L.W. 3356 (U.S. Sept. 29, 1992) (No. 92–704). This has been the holding in cases of both federal employment and non-federal employment. Additionally, all of these cases hold that the ADEA preempts another federal statute.

In analyzing whether the ADEA preempted § 1983, the court in *Ring v. Crisp County Hospital Authority, supra,* articulates the general rule: a precisely drawn, detailed statute preempts more general remedies. Because of the comprehensive statutory scheme set out under the ADEA and the lack of any legislative history indicating a contrary congressional intent, the *Ring* court concluded that the ADEA is the exclusive remedy for age discrimination. The court rejected an analogy to Title VII which has been held to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes. The court found that unlike Title VII, nothing in the legislative history of the ADEA indicated that Congress did not intend the ADEA to be the exclusive remedy. "By establishing the ADEA's comprehensive scheme for the resolution of employee complaints of age discrimination, Congress clearly intended that all claims of age discrimination be limited to the rights and procedures authorized by the ADEA." *Ring,* 652 F.Supp. at 482. The court

concluded that the ADEA provided the exclusive remedy for claims of age discrimination, whether those claims are founded on the Constitution or on rights created by the ADEA. We agree.

In a similar analysis, the Fourth Circuit in *Zombro v. Baltimore City Police Dept.* noted that "[t]he text and context of the ADEA itself confirm this conclusion [that ADEA is exclusive remedy]: "The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures, provided in sections 211(b), 216 ...' 29 U.S.C. § 626(b). Section 216 is a part of the Fair Labor Standards Act (FLSA) ..., and it has been held that the statutory remedy of that section is the sole remedy available to the employee for enforcement of whatever rights he may have under the FLSA." 868 F.2d at 1369 (citing *Lerwill v. Inflight Motion Pictures, Inc.,* 343 F.Supp. 1027 (N.D.Cal.1972)). The court concluded that the provisions of the ADEA evidence congressional intent to subject all age discrimination claims to the comprehensive statutory scheme clearly embodied in the language and legislative history of the ADEA.

In discussing the procedural requirements of the ADEA, one federal district court stated:

> The inescapable conclusion that is drawn from the foregoing is that if other modes of enforcement were available to the private litigant, the congressional scheme behind ADEA enforcement could easily be thwarted. An impatient plaintiff might unilaterally dispense with the informal negotiations contemplated by Congress, needlessly casting all concerned into costly litigation. Congress did not intend to allow a plaintiff to bypass the statutory scheme clearly embodied in the language of the ADEA. The only reasonable construction of the Act is that the statute's remedy is exclusive.

*McCroan v. Bailey,* 543 F.Supp. 1201, 1209 (S.D.Ga.1982). In sum, based on (1) the above cases holding that the ADEA is the exclusive remedy for age discrimination claims, (2) the cases holding that traditional preemption analysis does not apply when two federal statutes conflict, and (3) the inapplicability of extending the federal/state policy considerations guiding traditional preemption analysis to conflicts between federal statutes, we conclude that Congress intended the ADEA to be the exclusive remedy for age discrimination claims. Accordingly, we disagree with the district court's holding that the ADEA is preempted by the NLRA, and conclude that this Court has jurisdiction under the ADEA to entertain the plaintiffs' age discrimination claims.

*III. Summary Judgment on Britt's ADEA Claims and Directed Verdict on Hamilton's ADEA Claims.*

Having determined that this Court has jurisdiction over the age discrimination claims, we

review both the district court's granting of summary judgment in Grocers' favor on Britt's claims and the district court's directing a verdict in Grocers' favor on Hamilton's claims. After reviewing the merits of the claims, we affirm the respective decisions of the district courts.

Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reviewing the summary judgment, we apply the same standard of review as did the district court. *Waltman v. International Paper Co.,* 875 F.2d 468, 474 (5th Cir.1989); *Moore v. Mississippi Valley State Univ.,* 871 F.2d 545, 548 (5th Cir.1989). The pleadings, depositions, admissions, and answers to interrogatories, together with affidavits, must demonstrate that no genuine issue of material fact remains. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To that end we must "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986). Finally, as the Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 256, 106 S.Ct. at 2514 (citations omitted). The Court also held that the standard of review for a directed verdict is the same as that for review of a summary judgment. *Id.* at 250, 106 S.Ct. at 2511.

In addition, a reviewing court is not limited to the district court's reasons in affirming a grant of summary judgment. This Court may affirm on grounds other than those relied upon by the district court when the record contains an adequate and independent basis for that result. *Guthrie v. Tifco Indus.,* 941 F.2d 374, 379 (5th Cir.1991), *cert. denied,* ––– U.S. ––––, 112 S.Ct. 1267, 117 L.Ed.2d 495 (1992); *Schuster v. Martin,* 861 F.2d 1369, 1371 (5th Cir.1988).

When no direct evidence of age discrimination exists, the evidentiary procedure generally adapted to the ADEA context is that announced by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). *See Bienkowski v. American Airlines,* 851 F.2d 1503 (5th Cir.1988). Initially, the plaintiff must prove a *prima facie*

case of age discrimination. The elements of a *prima facie* case are hotly disputed in these two cases.[11] The elements of a *prima facie* case may be somewhat flexible in an ADEA case according to the facts in issue. *McCorstin v. United States Steel Corp.,* 621 F.2d 749 (5th Cir.1980). Because we affirm the district courts on an alternative basis, it is unnecessary to resolve the issue of what the proper elements of a *prima facie* case should be.

If the plaintiff proves his *prima facie* case, a presumption of discrimination is established. The burden of production then shifts to the defendant to rebut this presumption by articulating a legitimate, nondiscriminatory reason for its disparate treatment of the plaintiff. *Id.* Finally, the plaintiff must prove that the defendant's reasons are pretexts for unlawful discrimination either by showing: (1) that a discriminatory reason more likely motivated the defendant or (2) that the defendant's reason is unworthy of credence. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981). The plaintiff retains the burden of persuading the fact finder that impermissible discrimination motivated the adverse employment decision. *Id.*

Both Britt and Hamilton contend that Grocer's replacement of employees with others, some of whom were allegedly younger, was motivated by the age of the strikers and violated the ADEA. The district courts in both Britt and Hamilton held that the plaintiffs had failed to make out a *prima facie* case under the act.

As this Court has stated "it is relatively easy both for a plaintiff to establish a *prima facie* case

---

[11]The district court in the Britt case held that a *prima facie* case consists of evidence that a plaintiff (1) was discharged, (2) was qualified for the position, (3) was within the protected class at the time of discharge, (4) was replaced by someone outside the protected class, or (5) by someone younger, or (6) show otherwise that his discharge was because of age (citing *Bienkowski,* 851 F.2d at 1505).

The district court in the Hamilton case held that the plaintiffs could establish a *prima facie* case by showing (1) the company refused to consider recall applications of protected employees over forty years of age; (2) applications for recall were accepted from workers under forty years of age; and (3) the protected workers were qualified for the jobs.

Both the plaintiffs and Grocers each articulate a different version of what they believe the correct test for establishing a *prima facie* case should be.

and for a defendant to articulate a legitimate, non-discriminatory reason for his decision." *Amburgey v. Corhart Refractories Corp.,* 936 F.2d 805, 811 (5th Cir.1991). Because neither plaintiff can show that the defendant's reasons for disparate treatment of the plaintiffs are pretexts for unlawful discrimination, however, we see no need to rummage through the arguments over whether the plaintiffs have established a *prima facie* case. In the context of summary judgment or directed verdict, the question is not whether the plaintiff proves pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. Both Britt and Hamilton fail to do so.

Grocers contends that its decision to convert the temporary employees into permanent employees was motivated by several concerns: (1) its gratitude to these individuals for keeping the company in operation during the strike; (2) that these temporary employees were leaving to take jobs elsewhere; and (3) striker misconduct. In the Britt case, the plaintiffs offered several affidavits in an attempt to establish pretext. The evidence in these affidavits offered to show age-related employment decisions consists of what are at best characterized as stray remarks by three Grocers employees concerning the age of the workers. This Court has ruled that similar statements are insufficiently probative to create a jury issue in an ADEA case. *Guthrie v. Tifco,* 941 F.2d at 379; *Elliott v. Group Medical & Surgical Serv.,* 714 F.2d 556, 565 (5th Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984); *Stendebach v. CPC Int'l, Inc.,* 691 F.2d 735, 738 (5th Cir.1982), *cert. denied,* 461 U.S. 944, 103 S.Ct. 2122, 77 L.Ed.2d 1302 (1983). These statements are insufficient to show either that (1) a discriminatory reason more than likely motivated Grocers or (2) Grocers' explanation is unworthy of credence.

The Hamilton plaintiffs relied on much the same evidence in presenting their case for trial as did the Britt plaintiffs in the summary judgment proceeding. This evidence even considered with the additional evidence adduced at trial is insufficient to rebut Grocers' reasons for failing to recall the strikers. As the district court found, Grocers may have been reluctant to rehire these workers, but the evidence is insufficient to establish that the reason for this reluctance was age discrimination.

Contrary to plaintiffs' assertions, Grocers was under no obligation to notify the plaintiffs that

they were being replaced. Nor does this lack of notification imply a bias based on age. Hamilton also challenges Grocers' practice of refusing to recall anyone who resigned to obtain his benefits. The theory is that Grocers coerced older workers into resigning to obtain their pension benefits, thereby discriminating against these workers based on age. Nothing in the record supports this claim. Additionally, we do not see how this practice harms older plaintiffs.

Hamilton asserts that the strikers were replaced because of their seniority and higher salaries, and that such an action supports an inference of age discrimination. This Court, however, has stated repeatedly that "[s]eniority and age discrimination are unrelated." *Williams v. General Motors Corp.,* 656 F.2d 120, 130 n. 17 (5th Cir.1981), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982); *see also Amburgey,* 936 F.2d at 813. Hamilton relies on *Uffelman v. Lone Star Steel Co.,* 863 F.2d 404, 408 (5th Cir.), *cert. denied,* 490 U.S. 1098, 109 S.Ct. 2448, 104 L.Ed.2d 1003 (1989), to support this contention. *Uffelman* is distinguishable, however, because, by terminating Uffelman, the employer was able to avoid paying Uffelman's retirement benefits as he was nine months away from vesting. In this case, Grocers actually paid substantial retirement benefits to strikers who resigned. Finally, the comparison of the age of workers at another Grocers' subsidiary with the age of workers at the location where the plaintiffs worked does not bolster this argument.

Hamilton offered as support of age discrimination evidence that during the recall, younger workers were hired to take regular positions, while older employees awaiting recall were offered only jobs in the frozen food warehouse.[12] The record does not support this contention. Additionally, this Court held in *Hanchey v. Energas Co.,* 925 F.2d 96, 99 (5th Cir.1990), that offering a different job to the plaintiff did not raise a genuine issue of fact regarding pretext. We find the remainder of Hamilton's evidence equally unconvincing.

In sum, the appellants are left with nothing more than their speculation and belief that they were permanently replaced because of age. This type of evidence is insufficient to create a fact issue as to pretext. *Little v. Republic Refining Co.,* 924 F.2d 93 (5th Cir.1991); *Laurence v. Chevron*

---

[12]Plaintiffs complain that the recall offers were to frozen food selector positions, which they claim are undesirable.

*U.S.A., Inc.,* 885 F.2d 280 (5th Cir.1989). Therefore, we uphold the summary judgment in the Britt case and the directed verdict in the Hamilton case.

*IV. Summary Judgment of Hamilton's Section 301 Claims.*

The Hamilton plaintiffs base their § 301 claims on alleged agreements made between the union and Grocers in April of 1987. They contend that about April 2, 1987, Mr. Ed Fox, Grocers' operation manager, offered to permit the return of the striking employees, if they immediately agreed to cease their strike. They further contend that this offer and acceptance constituted an employment contract between the company and the union, the breach of which is actionable under Section 301 of the LMRA, 29 U.S.C. § 185(a). Hamilton also asserts that a letter from Mr. R.S. Bambace to Mr. A.W. Parker agreeing to recall strikers as provided by *Laidlaw Corporation v. NLRB,* 414 F.2d 99 (7th Cir.1969), *cert. denied,* 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 100 (1970), also constituted an offer which was breached. The district court held that neither the oral agreement nor the letter constituted a contract for labor giving rise to a § 301 action, and granted Grocers' Motion for Summary Judgment. We affirm.

Under the L.M.R.A. § 301, 29 U.S.C. 185, a federal court has jurisdiction over breach-of-contract actions between an employer and a labor organization. The fact that an alleged contract was based on an oral agreement during negotiations does not make it unenforceable under § 185. *Smith v. Kerrville Bus Co.,* 709 F.2d 914, 920 (5th Cir.1983).

The evidence presented by Hamilton in support of the contract demonstrates that this promise was never considered a binding contract arrangement. A.E. Parker, the union negotiator to whom the alleged statements were made, did not regard the statement as an offer of a binding contract, nor does he show that the Union accepted such an offer. In fact, the strikers agreed to return to work unconditionally after the supposed agreement was made. The district court correctly dismissed the § 301 claim, because no evidence existed from which a jury could find that a contract existed between the strikers and the company.

Hamilton's argument that the company breached the written recall agreement must also fail. This claim is barred by Hamilton's failure to pursue the appropriate arbitration remedies. Where a

contract provides for binding arbitration, an employee may not sue his employer under § 301 unless he has exhausted those remedies. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). Hamilton does not dispute the existence of the arbitration provision or the failure to invoke it. Hamilton instead argues that, because Grocers repudiated the remedial procedures specified in the contract, *Rabalais v. Dresser Industries, Inc.,* 566 F.2d 518, 519 (5th Cir.1978), requires that there was no need to exhaust the arbitration rights. We disagree. Grocers alleged misconduct is insufficient to invoke the repudiation exception.[13] We affirm the holding of the district court.

*V. Summary Judgment on Hamilton's State Law Tort Claims.*

Hamilton alleges a cause of action for the state law torts of duress and intentional infliction of emotional distress. The district court held that these claims are preempted by provisions of the NLRA and the ADEA based on *Farmer v. United Brotherhood of Carpenters & Joiners, Local 25,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), and granted Grocers' Motion for Summary Judgment. We do not agree that Hamilton's claims are preempted under *Farmer.* However, we affirm the district court's holding. Hamilton's allegations of intentional infliction of emotional distress and duress are meritless. Grocers merely insisted on its legal rights in a permissible way. Under this Court's decision in *Wilson v. Monarch Paper Co.,* 939 F.2d 1138, 1144 (5th Cir.1991), that does not give rise to a cause of action. The decision of the district court is affirmed.

In sum, for the foregoing reasons, we disagree with the district court's holding in the Britt case that the NLRA preempts the ADEA. Because we agree with the district court's holdings on all other issues, the judgments are

AFFIRMED.

---

[13]Hamilton argues that Grocers repudiated the arbitration procedures by concealing its alleged breach of the recall agreement through its use of labor pool workers.