Danielle DiSALVIO

v.

**LOWER MERION HIGH SCHOOL DISTRICT, et al.**

No. CIV. A. 00–5463.

United States District Court,
E.D. Pennsylvania.

June 12, 2001.

Joanne W. Rathgeber, Rathgeber & Alberts, Doylestown, PA, for Plaintiff.

Jeffrey H. Quinn, Dickie, McCamey & Chilcote, PC, Philadelphia, PA, for Defendants.

Michael A. Levin, David W. Brown, Andria L. Borock, Michael I. Levin and Associates, P.C., Huntington Valley, PA, for Thomas Russell.

## *MEMORANDUM AND ORDER*

KELLY, District Judge.

Presently before the Court are two Motions to Dismiss. The first was filed individually by Defendant Thomas Russell ("Russell"). The second is a Motion to Dismiss or for Partial Summary Judgment filed by Defendants Lower Merion School District ("LMSD"), Harriton High School ("HHS"), Lindsey Matskow ("Matskow"), Dr. Joseph D'Bartolomeo ("D'Bartolomeo"), Dr. David Magill ("Magill"), Joan Litman ("Litman"), Coach Mack ("Mack"),[1] Jen Mucker ("Mucker"), Adam Collacci ("Collacci"), Nick Satani ("Satani") and Hal Smith ("Smith") (collectively referred to as "the School District Defendants"). The Plaintiff, Danielle DiSalvio ("DiSalvio"), filed suit in this Court pursuant to 42 U.S .C. § 1983 for violations of her substantive rights under the Fourteenth Amendment to the United States Constitution, as well as for several state law causes of action. For the following reasons, the Motions are granted in part and denied in part.

## I. *BACKGROUND*

Accepting as true the facts alleged in the Plaintiff's Complaint and all reasonable inferences that can be drawn from them, the facts of the case are as follows. DiSalvio enrolled in the ninth grade at HHS in September of 1998. Smith, the head football coach at HHS, offered DiSalvio a position as the student manager for the HHS football team. DiSalvio accepted the position in the fall of 1999, the beginning of her sophomore year.

DiSalvio alleges that, from August to October of 1999, she was sexually harassed by Russell, an assistant football coach and school aid. Specifically, DiSalvio alleges that Russell: (1) rubbed her leg from her thigh to her knee and smiled at her in a sexually suggestive manner; (2) slid his hand down the back of her shirt and patted her buttocks, saying "thanks, sweetheart"; (3) winked at her suggestively

---

1. Mack's first name is not given by any of the parties. The Court will therefore refer to him as they do.

when they saw each other in HHS hallways; (4) brushed his hand against her breast as he grinned at her, feigning an accident; (5) constantly greeted her with the salutation "what's up, honey?"; and (6) followed her into the ladies room and conversed with her while she was in the stall.[2] As a result of this treatment, DiSalvio was embarrassed and afraid to return to school, eventually left school and finally relapsed into bulimia, for which she had successfully received treatment several years earlier.

DiSalvio also alleges that, although she repeatedly informed various HHS employees about Russell's conduct, no one attempted to prevent it. Specifically, DiSalvio alleges that she: (1) along with another student, informed Smith that Russell had rubbed her leg; (2) told Smith and Mucker, the football team's trainer, that he had slid his hand down her shirt and patted her buttocks; (3) told Collacci, a HHS teacher, that Russell had brushed his hand against her breast and followed her into the ladies' room; (4) discussed the incidents with Smith during a meeting with him and her parents; and (5) discussed the incidents with D'Bartolomeo, the HHS Principal, Matskow, the HHS Assistant Principal, and Litman, a HHS guidance counselor, who all accused DiSalvio of provoking Russell and instructed her not to discuss the meeting with anyone, not even her parents. DiSalvio also claims that, when Russell was approaching her, Mack once warned her sarcastically that "Here comes your boyfriend. He is going to get you."

On October 24, 2000, DiSalvio filed her Complaint. Counts I through VI of the Complaint allege, respectively: (1) a deprivation of her rights under the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983 (1994); (2) negligent supervision and retention of school employees; (3) negligent hiring of school employees; (4) negligence; (5) negligent infliction of emotional distress; and (6) intentional infliction of emotional distress.[3] The Defendants filed two separate Motions to Dismiss the Complaint, which the Court will now consider.

## II. *STANDARD OF REVIEW*

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a complaint.[4] *Sturm v. Clark,* 835 F.2d 1009, 1011 (3d Cir.1987). A complaint may be dismissed for failure to state a claim upon which relief may be granted if the facts pleaded, and reasonable inferences

---

**2.** DiSalvio also alleges that Russell patted another female student's buttocks with a rolled up newspaper in front of an entire class of students.

**3.** Interestingly, DiSalvio did not bring suit pursuant to Title IX, 20 U.S.C. § 1681(a) (1994) ("No person ... shall, on the basis of sex, be ... subjected to discrimination under any education program or activity receiving federal financial assistance ."). Nor does DiSalvio bring state law claims for battery, assault or false imprisonment by Russel.

**4.** The School District Defendants fashioned their Motion to Dismiss as one seeking summary judgment alternatively pursuant to Fed-

eral Rule of Civil Procedure 12(b). *See* Fed. R.Civ.P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment...."). Although presented as a motion seeking summary judgment, the parties discussed purely legal matters and failed to present or discuss any record evidence. Given the procedural posture of this case, it would be premature to treat this Motion as one for summary judgment. The Court will therefore treat it as a simple motion to dismiss.

therefrom, are legally insufficient to support the relief requested. *Commonwealth ex. rel. Zimmerman v. Pepsico, Inc.,* 836 F.2d 173, 179 (3d Cir.1988). In considering whether to dismiss a complaint, courts may consider those facts alleged in the complaint as well as matters of public record, orders, facts in the record and exhibits attached to a complaint. *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1391 (3d Cir.1994). Courts must accept those facts, and all reasonable inferences drawn therefrom, as true. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Moreover, a complaint is viewed in the light most favorable to the plaintiff. *Tunnell v. Wiley,* 514 F.2d 971, 975 n. 6 (3d Cir.1975). In addition to these expansive parameters, the threshold a plaintiff must meet to satisfy pleading requirements is exceedingly low; a court may dismiss a complaint only if the plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### III. *DISCUSSION*

#### A. *Russell's Motion to Dismiss*

1. *DiSalvio's § 1983 Claim Against Russell*

DiSalvio has brought suit against Russell, and the other Defendants, pursuant to § 1983. Section 1983 states that any person acting under color of state law that deprives someone of a federal constitutional or statutory right shall be liable to the injured party. 42 U.S.C. § 1983. In this case, DiSalvio claims that the Defendants violated her rights to bodily integrity under the Fourteenth Amendment to the United States Constitution. Russell posits several reasons why the Court should dismiss this claim.

First, Russell argues that DiSalvio has not pleaded facts sufficient to establish any rights guaranteed by the Fourteenth Amendment. DiSalvio alleged a violation of her substantive due process right to bodily integrity. Such a right clearly exists. *Stoneking v. Bradford Area Sch. Dist.,* 882 F.2d 720, 726 (3d Cir.1989). That right is violated when a wrongdoer's actions are "so ill-conceived or malicious that it shocks the conscience." *Miller v. City of Philadelphia,* 174 F.3d 368, 375 (3d Cir.1999); *Cannon v. City of Philadelphia,* 86 F.Supp.2d 460, 468 (E.D.Pa.2000). Russell contends that his alleged actions do not shock the conscience. The Court disagrees. Accepting the allegations of DiSalvio's Complaint, Russell's alleged actions are sufficiently conscience-shocking to survive the instant Motion to Dismiss. *Cf. Stoneking,* 882 F.2d at 727 ("[A] teacher's sexual molestation of a student could not possibly be deemed an acceptable practice....").

Second, Russell argues that he enjoys qualified immunity. With regard to § 1983 actions, public officials generally enjoy qualified immunity for their actions unless those actions violate clearly established constitutional rights of which a reasonable person would know. *See, e.g., Anderson v. Creighton,* 483 U.S. 635, 639–41, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald,* 457 U.S. 800, 817–18, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Russell, the Defendant, bears the burden of establishing that he enjoys qualified immunity. *See Ryan v. Burlington County,* 860 F.2d 1199, 1204 n. 9 (3d Cir.1988). Russell has not carried that burden. Any reasonable person would have known that acting in the alleged manner would violate DiSalvio's well established rights to bodily integrity. No reasonable official could consider such conduct lawful or proper. Based on the allegations of the Complaint,

Russell does not enjoy qualified immunity for his actions.

■■■ Finally, Russell argues that, because DiSalvio's federal claim pursuant to § 1983 resembles a Title IX suit, it is barred by the *Sea Clammers* doctrine. *See generally Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). Stated generally, the *Sea Clammers* doctrine holds that Congress, which enacted § 1983, can provide that a statute will not allow for § 1983 remedies. *Id.* at 20, 101 S.Ct. 2615. While Congress may do so explicitly, it can also preclude reliance on § 1983 by creating a comprehensive statutory enforcement scheme that implicitly evidences an intent to foreclose § 1983 remedies. *Id.* Indeed, the general rule of statutory construction is that a precisely drawn, detailed statute preempts more general remedies. *See generally Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Nonetheless, once a statute grants a federal rights, a strong presumption arises that Congress intended to allow remedies under § 1983, and Russell bears the burden of showing otherwise. *See Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 107, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989); *see also Johnson v. Orr*, 780 F.2d 386, 395 (3d Cir.1986) (stating that "ruling out certain remedies" is appropriate "only when it can be clearly inferred that Congress intended their preemption.").

■■■ Were DiSalvio bringing suit under § 1983 for a violation of Title IX, the archetypal *Sea Clammers* case, her claim would typically be barred by the doctrine. *See, e.g., Bougher v. University of Pittsburgh*, 713 F.Supp. 139, 146 (W.D.Pa.1989). It is equally well settled, at least in the United States Court of Appeals for the Third Circuit, that a § 1983 action based on a violation of constitutional rights would be subsumed by Title IX if the plaintiff brings a Title IX claim as well. *See Williams v. School Dist. of Bethlehem*, 998 F.2d 168, 176 (3d Cir.1993); *Pfeiffer v. Marion Ctr. Area Sch. Dist.*, 917 F.2d 779, 789 (3d Cir.1990) (rejecting constitutional rights exception to *Sea Clammers* doctrine).[5] In the instant case, however, DiSalvio has not brought a claim under Title IX. Thus, there is no statutory claim into which her constitutional claim under § 1983 could be subsumed. The question therefore becomes whether *Pfeiffer* and *Williams*, the controlling cases in the Third Circuit, apply to cases in which a plaintiff has not specifically brought a Title IX claim. The Court finds that they do not.

In *Pfeiffer*, the plaintiff complained that she had been improperly dismissed from an honor society because of her pregnancy. *Pfeiffer*, 917 F.2d at 781–83. The plaintiff brought suit under Title IX as well as § 1983 for violations of her constitutional rights. *Id.* at 783. The lower court found the plaintiff's constitutional claims were subsumed by her statutory claim under Title IX and otherwise barred by the *Sea Clammers* doctrine. The Third Circuit agreed. *Id.* at 789. In *Williams*, the plaintiff challenged his exclusion, because of his sex, from the girl's field hockey

---

**5.** The Courts of Appeals have been unable to reach a consensus on this issue. *Compare Bruneau ex rel. Schofield v. South Kortright Cent. Sch. Dist.*, 163 F.3d 749, 757–58 (2d Cir.1998) (rejecting constitutional rights exception), *and Waid v. Merrill Area Pub. Sch.*, 91 F.3d 857, 862 (7th Cir.1996), *with Craw-*ford v. Davis*, 109 F.3d 1281, 1284 (8th Cir.1997) (accepting constitutional rights exception), *and Seamons v. Snow*, 84 F.3d 1226, 1233–34 & n. 8 (10th Cir.1996), *and Lillard v. Shelby County Bd. of Ed.*, 76 F.3d 716, 722–24 (6th Cir.1996).

team. *Williams*, 998 F.2d at 170. The plaintiff brought suit under Title IX as well as § 1983 for violations of his constitutional rights. Following the rationale of *Pfeiffer*, *Williams* held that the plaintiff could not maintain his constitutional claims against the defendant because they were subsumed by his Title IX claim. *Id.* at 176.

Nothing in the language of *Williams* or *Pfeiffer* requires their application beyond factually similar cases, namely cases in which the plaintiff clearly alleges violations of Title IX and, through § 1983, the Constitution. As *Williams* does no more than cite to *Pfeiffer*, the Court must look to the latter case for guidance. *Pfeiffer* cites to several "analogous cases" in support of its decision. *Pfeiffer*, 917 F.2d at 789. Each of the analogous Title IX cases involved a plaintiff who had expressly sought relief under Title IX. *Id.* (citing *Bougher*, 713 F.Supp. 139, 146; *Mabry v. State Bd. for Cmty. Colls. & Occupational Ed.*, 597 F.Supp. 1235, 1239 (D.Colo.1984), *aff'd on other grounds*, 813 F.2d 311 (10th Cir. 1987)). The *Pfeiffer* decision also cited two non-Title IX cases that precluded § 1983 claims even though the plaintiff had not brought statutory claims into which the constitutional claims could be subsumed. *Id.* (citing *Smith v. Robinson*, 468 U.S. 992, 1011–12, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984) (discussing the Education of the Handicapped Act, 84 Stat. 175, as amended, 20 U.S.C. § 1400 *et seq.*); *Zombro v. Baltimore City Police Dep't*, 868 F.2d 1364, 1366–67 (4th Cir.1989) (holding that plaintiff may not "cavalierly bypass the comprehensive process fashioned by Congress in the ADEA by merely asserting a violation of a constitutional right rather than the statutory right....")). The crucial consideration in the preclusion analysis, however, is "what Congress intended." *Smith*, 468 U.S. at 1012, 104 S.Ct. 3457. Cases dealing with different statutory frameworks therefore have limited application to a Title IX case. *Cf. id.* at 1009–1013, 104 S.Ct. 3457 (discussing legislative history of statute).

In short, the *Pfeiffer* decision, as it applies to cases in which the plaintiff does not allege a violation of Title IX, is less than clear. The Court must therefore turn to its sister courts for guidance. Several cases since *Pfeiffer* have concluded, albeit implicitly, that *Pfeiffer* and *Williams* do not apply to cases such as this one. *See Seneway v. Canon McMillan Sch. Dist.*, 969 F.Supp. 325, 330–31 (W.D.Pa.1997) (reasoning that *Stoneking*, 882 F.2d 720, had allowed plaintiff's § 1983 claims to proceed because plaintiff did not also bring Title IX claim); *see also Combs v. School Dist. of Philadelphia*, 1999 WL 1077082, at *4 (E.D.Pa. Nov.29, 1999) (refusing to apply *Sea Clammers* doctrine because, "while the Complaint does make reference to Title IX, it is clear that Plaintiff has no intention of raising a Title IX claim. The Complaint states a Section 1983 cause of action, and this court will treat it that way."); *Miller v. Kentosh*, 1998 WL 355520, at *3 (E.D.Pa. June 29, 1998) (refusing to apply *Sea Clammers* doctrine to § 1983 claim against employee in his individual capacity because plaintiff had not brought Title IX claim against him personally). Although this result would seemingly allow plaintiffs to frustrate the *Sea Clammers* doctrine through artful pleading, the lower courts within this Circuit have regularly allowed plaintiffs not specifically alleging a violation of Title IX to proceed with a § 1983 claim in its stead. The Court will do the same. Because DiSalvio has not brought a Title IX claim, addressing her constitutional claims is necessary. *Cf. Powell v. Ridge*, 189 F.3d 387, 403 (3d Cir.1999) (limiting scope of *Williams* and *Pfeiffer*, and noting that those cases were simply "predicated on the

principle that courts should refrain from deciding constitutional issues unnecessarily."). Russell has not demonstrated that the *Sea Clammers* doctrine applies to a case simply because a constitutional claim resembles one that could have been brought under Title IX but was brought under § 1983 instead.[6] Accordingly, the Court will not dismiss DiSalvio's § 1983 claim against Russell.[7]

### 2. *Claims Against Russell in His Official Capacity*

Russell contends that claims brought against him in his official capacity are barred because they are actually against the agency itself. While the Court agrees that a suit against Russell in his official capacity is in essence a suit against the entity employing him, and any damages recovered must therefore come from that entity, that conclusion does not mandate the dismissal of those claims. *See Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("Thus while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself."). Russell has cited no persuasive authority in support of this argument. Moreover, his reliance on *Melo v. Hafer*, 912 F.2d 628, 634–35 (3d Cir.1990) is mis-

placed. That case involved a suit against a State and its officials, and stated that, because States are not persons within the meaning of § 1983, state officials are not subject to suit under § 1983 for acts in their official capacities. *See id.; see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). In the instant case, however, DiSalvio has sued local agencies, which are clearly persons under § 1983. The Court will therefore not dismiss claims against Russell in his official capacity.

### 3. *DiSalvio's State Law Claims Against Russell*

Aside from her § 1983 claim, DiSalvio brought several state law claims against Russell and the other Defendants. Specifically, DiSalvio's state law claims include: (1) negligent supervision and retention of school employees; (2) negligent hiring of school employees; (3) negligence; (4) negligent infliction of emotional distress; and (5) intentional infliction of emotional distress. Russell contends that DiSalvio's Complaint does not allege facts sufficient to bring these claims against him and, in the alternative, that he enjoys official immunity.

 The Court agrees that several of these claims cannot proceed against Russell. Clearly, Russell, the employee

---

**6.** It could also be argued that the *Williams* and *Pfeiffer* decisions, which involved equal protection violations, do not apply to cases, like this one, that involve alleged due process violations. The equal protection rights typically associated with discrimination preclude different conduct than that precluded by the due process right to bodily integrity involved in this case. *Cf. Murrell v. School Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1249 & n. 5 (10th Cir.1999) (noting possible distinction between due process and equal protection rights in context of sexual harassment); *Ring v. Crisp County Hosp. Auth.*, 652 F.Supp. 477,

482 (M.D.Ga.1987) (allowing certain constitutional claims to proceed under § 1983 despite preemption of others by Title IX). For example, the *Ring* decision, on which *Pfeiffer* relied, stated that "[i]t is the underlying conduct and not the right asserted that determine[] the remedy.... [Not] all of plaintiff's § 1983 claims are preempted." *Id.*

**7.** Because DiSalvio's federal cause of action survives Russell's Motion to Dismiss, the Court retains supplemental jurisdiction over DiSalvio's remaining state law claims.

wrongdoer, cannot be liable for negligent hiring, retention or supervision of himself. Moreover, the harassment to which Russell allegedly subjected DiSalvio was intentional, not negligent. For that reason, neither the negligence nor the negligent infliction of emotion distress claims can be brought against Russell.[8]

DiSalvio argues that Russell, as "[o]ne who intentionally causes injury to another," should be "subject to liability to the other for that injury...." Pl.'s Resp. to Def.'s Mot. to Dismiss at 13 (citing Restatement (Second) of Torts § 870 (1979)). Though the Court cannot disagree with that general proposition, that particular section of the Restatements merely attempts to explain recently developed intentional torts; it has no application outside the realm of intentional torts. *See id.* cmt. a ("This Section purports to supply [a] unifying principle and ... explain the basis for the development of the more recently created intentional torts. More than that, it is intended to serve as a guide for determining when liability should be imposed for harm that was intentionally inflicted, even though the conduct does not come within the requirements of one of the well established and named intentional torts."). Nor has DiSalvio offered case law suggesting that the Pennsylvania Supreme Court has held otherwise. DiSalvio's Complaint clearly alleges that Russell acted with intent. DiSalvio therefore cannot maintain against Russell claims for: (1) negligent supervision and retention of school employees; (2) negligent hiring of school employees; (3) negligence; or (4) negligent infliction of emotional distress. With regard to Russell, those claims must be dismissed.

 DiSalvio may, however, bring suit against Russell for intentional infliction of emotional distress. That tort requires "outrageous conduct on the part of the tortfeasor" that would arouse "resentment against the actor" because his actions go so far "beyond all possible bounds of decency" that it would be "regarded as atrocious, and utterly intolerable in a civilized society." *Kazatsky v. King David Memorial Park, Inc.,* 515 Pa. 183, 527 A.2d 988, 990–91 (1987).[9] Based on the facts alleged in this case, Russell's behavior rises to that level. Teacher on student sexual harassment has a character totally distinct from an employment context between two adults. In light of the parties' age and relative power, Russell's actions were extreme and outrageous, and any reasonable person would have known that to act in such a way would be to incur liability and resentment. DiSalvio has alleged sufficient facts to support her claim.

 Moreover, based on the allegations of the Complaint, Russell does not enjoy official immunity for his actions. The Commonwealth of Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa. Cons.Stat. Ann. § 8541–8564 (West 1982), sets forth the immunity of agencies and their employees. That statute states, "Except as otherwise provided in this subchapter, no local agency shall be liable for any

---

**8.** Even under the "impact rule," upon which DiSalvio relies, a plaintiff can only bring a cause of action for negligent infliction of emotional distress when "a plaintiff sustains bodily injuries ... which are accompanied by ... mental suffering directly traceable to the peril in which the defendant's negligence placed the plaintiff...." *Brown v. Philadelphia Coll. of Osteopathic Med.,* 449 Pa.Super. 667, 674

A.2d 1130, 1135–36 (1996). Russell's actions were intentional, not negligent. The impact rule, which depends upon the negligence of a defendant, is therefore inapposite to this case.

**9.** Unlike the School District Defendants, Russell has not argued that this tort is unavailable to plaintiffs in the Commonwealth of Pennsylvania.

damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. Cons.Stat. § 8541. With regard to an official's immunity, the statute provides that employees are liable to the "to the same extent as his employing local agency." 42 Pa. Cons. Stat. § 8545. Thus, through the confluence of sections 8545 and 8541, local officials typically enjoy expansive state law immunity from actions taken by them in the course of their official duties. *See, e.g., Owens v. City of Philadelphia,* 6 F.Supp.2d 373, 394 (E.D.Pa.1998).

Official immunity of agency employees does not, however, extend to any behavior that constitutes "a crime, actual fraud, actual malice or willful misconduct. . . ." 42 Pa. Cons.Stat. § 8850. "Willful misconduct" generally means "misconduct which the perpetrator recognized as misconduct and which was carried out with the intention of achieving exactly that wrongful purpose," or, in other words, intentional torts. *Owens,* 6 F.Supp.2d at 394–95. Russell's alleged conduct exceeds all bounds of decency and the facts alleged give rise to a reasonable inference that Russell acted intentionally, recklessly and with malice.[10] Thus, Russell is not entitled to official immunity.

### B. *The School District Defendants' Motion to Dismiss*

The School District Defendants, LMSD, HHS, Matskow, D'Bartolomeo, Magill, Litman, Mack, Mucker, Collacci, Satani and Smith, also filed a Motion to Dismiss DiSalvio's Complaint. These Defendants posit three grounds for the dismissal of the claims against them. First, they argue that DiSalvio's Complaint does not allege with sufficient particularity the facts that would support her claims. Second, they contend that the Commonwealth of Pennsylvania does not recognize the claims of negligent and intentional infliction of emotional distress. Finally, they suggest that they enjoy immunity for claims brought against them in their official and individual capacities. The Court will address each argument in turn.

### 1. *Notice Pleading*

◼ The School District Defendants appear to argue that DiSalvio has not alleged the facts of her case with sufficient particularity. The Court disagrees. It is well settled that the Federal Rules of Civil Procedure require only averments of facts that put defendants on notice of the claims against them. For example, Federal Rule of Civil Procedure 8 requires only that pleadings setting forth a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and requires the averments of such a pleading to be "simple, concise, and direct." Fed.R.Civ.P. 8(a), (e)(1). Rule 8 similarly requires that "[a]ll pleadings shall be so construed as to do substantial justice." Fed.R.Civ.P. 8(f). Indeed, the Federal Rules of Civil Procedure are meant merely as a vehicle "to facilitate a proper decision on the merits," not as a "game of skill in which one misstep . . . may be decisive." *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Accordingly, it is of little moment that certain defendants are not mentioned prominently throughout the Complaint, or

---

**10.** The Court similarly rejects Russell's argument that DiSalvio cannot recover punitive damages from him under her § 1983 claim. *See Coleman v. Kaye,* 87 F.3d 1491, 1497 (3d Cir.1996) (holding that punitive damages may be awarded under § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.").

that their actions are not recounted with exacting particularity.

■■■ The only individual Defendants that are not specifically mentioned in the body of the Complaint are Satani, the HHS Athletic Director, and Magill, the LMSD Superintendent. With respect to these Defendants, however, the Complaint alleges that they knew or should have known about the harassment and failed to stop it.[11] That allegation is enough to put these Defendants on notice of the claims against them, and to require them to defend those charges.

### 2. Intentional Infliction of Emotional Distress

The Defendants, relying on *Hoy v. Angelone*, 554 Pa. 134, 720 A.2d 745, 753 n. 10 (1998), contend that the "Pennsylvania Supreme Court does not recognize intentional infliction of emotional distress as a cause of action." Defs.' Mem. in Supp. of Mot. to Dismiss.[12] That interpretation of the *Hoy* decision is incorrect. Rather, *Hoy* stands for the quite different proposition that the Pennsylvania Supreme Court has yet to officially recognize the tort. *Hoy*, 720 A.2d at 753 n. 10. . Aside from what is at best a misreading of *Hoy*, the School District Defendants offer no intermediate appellate cases indicating that the Pennsylvania Supreme Court would, if it squarely addressed the issue, refuse to recognize the tort. Nor do the School District Defendants attempt to address the many decisions of the United States Court of Appeals for the Third Circuit, which have repeatedly held that the tort of intentional infliction of emotional distress, despite the ambiguous language of *Kazatsky* and *Hoy*, are available in Pennsylvania. *See, e.g., Silver v. Mendel*, 894 F.2d 598, 606 (3d Cir.1990); *Williams v. Guzzardi*, 875 F.2d 46, 51 (3d Cir.1989).

■■■ Moreover, the Defendants' assertion that the allegations of the Complaint do not rise to the requisite level of egregiousness is without merit. As stated above, this tort requires outrageous conduct that would arouse resentment against the actor because his actions exceed all possible bounds of decency. *Kazatsky*, 527 A.2d at 990–91. While the School District Defendants are clearly not as culpable as Russell, their inactivity in the face of DiSalvio's repeated pleas for help constitute outrageous behavior. While it may be that the evidence revealed through discovery will show otherwise, the allegations of the Complaint, and all reasonable inferences to be drawn therefrom, make out a case for intentional infliction of emotional distress against the School District Defendants. The Court will therefore not dismiss this claim.

### 3. Agency and Official Immunity

■■■ As stated above, Pennsylvania law provides that, with a few exceptions, "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any

---

**11.** DiSalvio suggests that Magill should have known about the harassment because: (1) DiSalvio's mother and the father of one of DiSalvio's classmates wrote Magill a letter about it; and (2) DiSalvio requested home schooling, which should have prompted an investigation by Magill. *See* Pl.'s Resp. to Defs.' Mot. to Dismiss at 7–8. These allegations do not appear in the Complaint itself. Nonetheless, the Court finds that the factual allegations contained in the Complaint are sufficient to give rise to the reasonable inference that Satani and Magill were on notice of the harassment and should have acted to correct it.

**12.** Because the School District Defendants neglected to paginate their Memorandum, the Court cannot give a pinpoint citation to this quotation.

other person." 42 Pa. Cons.Stat. § 8541. The "otherwise provided" language refers to specific acts of negligence enumerated by section 8542(b)(1)-(8), none of which are implicated by this case. Thus, LMSD and HHS would appear to enjoy immunity. Moreover, DiSalvio offered no case law in support of finding these two agency Defendants liable on her state law claims. Thus, to the extent that DiSalvio's state law claims seek monetary relief, LMSD and HHS are immune from suit.[13]

■ An agency's employees enjoy similar immunity, unless their actions constitute "a crime, actual fraud, actual malice or willful misconduct. . . ." 42 Pa. Cons. Stat. § 8850. While "willful misconduct" generally refers to intentional torts, it can also mean, except in police abuse cases, misconduct "whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that desire can be implied." *Owens*, 6 F.Supp.2d at 394–95. Based on the allegations of the Complaint, the School District Defendant employees do not enjoy qualified immunity for their inaction. DiSalvio alleged facts sufficient to give rise to the reasonable inference that these Defendants were on notice about the harassment and knew or should have known that their nonfeasance would allow the harassment to continue or worsen. Because these Defendants were aware that the continued harassment of DiSalvio was substantially certain to follow if they did not act, their desire that it continue can be implied. Accordingly, based solely on the allegations of the Complaint, general though they may be, these

Defendants do not enjoy qualified immunity for DiSalvio's state law claims against them.

### C. *Conclusion*

Although most of DiSalvio's claims have survived the two Motions to Dismiss, some have not. With regard to Russell, whose alleged behavior was all intentional, DiSalvio may not maintain negligence actions against him for: (1) negligent supervision and retention of school employees; (2) negligent hiring of school employees; (3) negligence; and (4) negligent infliction of emotional distress. The remaining causes of action against Russell, including the § 1983 and intentional infliction of emotional distress claims, remain intact. With regard to the School District Defendants, LMSD and HHS are immune from suit for all of the state law claims brought against them. Because of the express language of the Pennsylvania Tort Claims Act, however, that immunity does not extend to any portion of DiSalvio's suit that seeks equitable relief. Moreover, none of the individual employee Defendants is entitled to immunity for his or her actions. Each is therefore subject to suit for all of the causes of action contained in DiSalvio's Complaint.

### ORDER

**AND NOW**, this 12th day of June, 2001, in consideration of the Motion to Dismiss filed by Thomas Russell ("Russell") (Doc. No. 19), the Response filed by the Plaintiff, Danielle DiSalvio ("DiSalvio"), and the Reply filed by Russell, as well as the Motion to Dismiss or for Partial Summary Judg-

---

**13.** The immunity conferred by the Tort Claims Act extends only to suits seeking monetary relief; it does not apply to suits that seek equitable relief such as an injunction. *Centennial Sch. District v.. Independence Blue Cross*, 885 F.Supp. 683, 689 (E.D.Pa.1994). As DiSalvio's Complaint seeks injunctive relief as well as damages, the Court cannot

dismiss those claims in their entirety. Moreover, it should be noted that the Tort Claims Act cannot confer immunity with regard to DiSalvio's § 1983 claim. *Buskirk v. Seiple*, 560 F.Supp. 247, 250 (E.D.Pa.1983). As these Defendants have mounted no serious challenge to that claim, it will not be dismissed.

ment filed by Defendants Lower Merion School District ("LMSD"), Harriton High School ("HHS"), Lindsey Matskow ("Matskow"), Dr. Joseph D'Bartolomeo ("D'Bartolomeo"), Dr. David Magill ("Magill"), Joan Litman ("Litman"), Coach Mack ("Mack"), Jen Mucker ("Mucker"), Adam Collacci ("Collacci"), Nick Satani ("Satani") and Hal Smith ("Smith") (Doc. No. 6), and the Response of DiSalvio, it is **ORDERED** that:

1. The Motions to Dismiss are **GRANTED IN PART:**

a. All negligence claims brought against Russell, specifically Counts II, III, IV and V of DiSalvio's Complaint, are **DISMISSED** to the extent that they seek relief from Russell.

b. All state law claims brought against LMSD and HHS, specifically Counts II, III, IV, V and VI of DiSalvio's Complaint, are **DISMISSED** to the extent that they seek monetary relief.

2. The Motions to Dismiss are **DENIED IN PART**. All other claims against the Defendants remain intact.